# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Veterans Assistance Comm'n v. County Board*, 2013 IL App (3d) 120075

---

| | |
|---|---|
| Appellate Court Caption | The VETERANS ASSISTANCE COMMISSION OF GRUNDY COUNTY, ILLINOIS, and ELTON MONSON, Petitioners-Appellants, v. The COUNTY BOARD OF GRUNDY COUNTY, ILLINOIS; KENNETH BUCK, Commander of Morris American Legion Post No. 294; GLENN GAVRIL, Commander of Coal City American Legion Post No. 796; DOUGLAS MARTIN, Commander of Minooka American Legion Post No. 1188; ALAN LOVE, Commander of Grundy County Marine Corps League; RHODE BRONK, Commander/Officiant of Disabled American Veterans, Chapter 86; and GERALD BELT, Commander of Morris VFW Post No. 6049, Respondents-Appellees. |
| District & No. | Third District<br>Docket No. 3-12-0075 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed<br>Modified upon denial<br>of rehearing | March 5, 2013<br><br>April 2, 2013<br>April 2, 2013<br><br>May 15, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute between two veterans' assistance commissions in a particular county, the trial court's judgment granting relief in favor of the newly organized commission was reversed and the cause was remanded for further proceedings to determine whether either commission met the statutory requirements of the Military Veterans Assistance Act to be the county's only central veterans assistance agency, including the requirement that the commission have a delegate and an alternate from each of the military veterans organizations in the county. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 11-MR-104; the Hon. Robert C. Marsaglia, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Brett R. Geiger (argued), of Malmquist & Geiger, of Morris, for appellants. |
| | Johnathan M. Bates, State's Attorney, of Morris, and Michael A. Mattingly (argued), of Minooka, for appellee County Board of Grundy County. |
| | Timothy J. Rathbun (argued), of Rathbun, Cservenyak & Kozol, LLC, of Joliet, for other appellees. |
| Panel | PRESIDING JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices Holdridge and McDade concurred in the judgment and opinion. |

**OPINION**

¶ 1    In 2002, the County Board of Grundy County (the County Board) passed a resolution recognizing the Veterans Assistance Commission (VAC) of Grundy County (the original VAC), which was formed in 1999. On December 13, 2011, the County Board passed a resolution that first repealed the 2002 resolution recognizing the original VAC and then recognized another, newly created Grundy County VAC (the second VAC).

¶ 2    The petitioners filed a complaint for declaratory judgment in the circuit court of Grundy County requesting the court to declare that the original VAC remained intact and the County Board's "reorganization" resolution was contrary to statute, an unlawful exercise of power, and "without legal effect." The respondents, the County Board and the six individuals who organized the second VAC, filed a counterclaim requesting an injunction restraining the superintendent of the original VAC from occupying the county-funded office of the VAC and having access to VAC files.

¶ 3    On January 12, 2012, the court entered an order granting the injunction. The court also denied the petitioners' amended complaint seeking a declaratory judgment that the original

VAC remained intact and that the County Board's 2011 resolution was without legal effect. The petitioners now appeal the trial court's January 12, 2012, order granting relief in favor of the respondents. We reverse and remand for further proceedings.

¶ 4                                                                 FACTS

¶ 5     On November 28, 2011, respondents Kenneth Buck, Alan Love, Rhode Bronk, Gerald Belt, Glenn Gavril, and Douglas Martin appeared before the media relations committee of the County Board on behalf of the following veterans' organizations, respectively: Morris American Legion Post No. 294; Grundy County Marine Corps League; Disabled American Veterans, Chapter 86; Morris VFW Post No. 6049; Coal City American Legion Post No. 796; and Minooka American Legion Post No. 1188. The six representatives requested the County Board "cease the current operation" of the original VAC and recognize a separate, second VAC. When appearing before the media relations committee, the six representatives advised the committee that Elton Monson (Monson), superintendent of the original VAC, refused to allow delegates from their respective six Grundy County veterans' organizations to participate in the decision-making of the original VAC.

¶ 6     Ultimately, the media relations committee acted on this information and recommended that the County Board should repeal resolution 2002-069, which recognized the original VAC for purposes of county funding. On December 13, 2011, consistent with the recommendation of the media relations committee, the County Board passed a resolution entitled "RESOLUTION TO RECOGNIZE AND APPROVE A REORGANIZED VETERANS ASSISTANCE COMMISSION AND TO REPEAL GRUNDY COUNTY RESOLUTION NUMBER 2002-069." The resolution repealed resolution 2002-069 and recognized the second, newly organized VAC. Three days later, on December 16, 2011, the petitioners filed a complaint in the circuit court of Grundy County seeking a declaratory judgment that the County Board's December 13, 2011, resolution was without legal effect, and the petitioners requested other injunctive relief not relevant to the outcome of this appeal.[1]

¶ 7     The second VAC elected Buck, from Morris American Legion Post No. 294, as superintendent on December 23, 2011. The next day, the original VAC held its annual election of officers on December 24, 2011, and reelected Monson as superintendent for another four-year term. On December 29, 2011, the county sent a letter to Monson indicating that all benefits, income, and insurance for Monson, as superintendent, would be terminated as of December 31, 2011.

---

[1]The petitioners' original complaint also requested the court to temporarily restrain and then permanently enjoin the impending election of the superintendent and officers for the second VAC, scheduled for Saturday, December 17, 2011. On Friday, December 16, 2011, the trial court neither granted nor denied the petitioners' request for a temporary restraining order because the original VAC was already enjoined from holding elections in a prior case, case No. 11-MR-74, until that case was voluntarily dismissed by the county on December 19, 2011. The trial court then denied the petitioners' request for a temporary restraining order on December 19, 2011.

¶ 8	On January 9, 2012, Buck, Love, Bronk, Belt, Gavril, and Martin filed a counterclaim in the original declaratory action initiated by the petitioners. Count I of the counterclaim involved an action in *quo warranto* to require Monson to demonstrate his authority to continue to act as the superintendent of the Grundy County VAC. Count II sought an injunction restraining Monson from occupying the offices of the Grundy County VAC and possessing any of its files.

¶ 9	On January 10, 2012, the petitioners filed an answer to the counterclaim, as well as an amended petition for declaratory judgment, which included the additional facts that took place after December 16, 2011. The amended complaint also sought to have the second VAC's election declared void and the original VAC's election recognized as valid.

¶ 10	The matter proceeded to a hearing on the petitioners' amended complaint and the respondents' counterclaim on January 12, 2012. The parties stipulated to the following relevant facts summarized below.[2] The parties stipulated that since December 29, 2011, two separate elections have occurred, "resulting in multiple persons acting and otherwise holding themselves out as having the authority to bind the [VAC]."

¶ 11	In addition, the petitioners presented several witnesses who testified that elections for the original VAC took place on December 24, 2011. According to these witnesses, several of the respondents, namely, Buck, Bronk, Belt, Love, and Gavril, received notice of the original VAC's scheduled election but chose not to attend.

¶ 12	After argument, the trial court entered an order declaring the County Board had the authority to recognize the new VAC, and the court also held the County Board was not required to fund the original VAC. The court denied the petitioners' amended complaint for declaratory relief, presumably on this basis. Next, the court's order granted the respondents' counterclaim and ordered Monson and the original VAC to be enjoined from occupying the VAC office and conducting VAC business. The court further stated:

> "[I]t is not my ruling that [the original VAC] doesn't exist, I guess. It's still there, but it is not the one–it's not the one being recognized by the County Board and being funded by the County Board. So if they want to stay in their office space, they better figure out how they're going to pay for it."

Finally, the court denied the petitioners' request for a stay of judgment pending appeal. The petitioners appeal both the court's ruling with respect to the amended complaint and the respondents' counterclaim.

¶ 13	ANALYSIS

¶ 14	On appeal, the petitioners argue the trial court erroneously concluded that the County Board had the authority in 2011 to recognize and fund a new VAC. In support of this

---

[2]At oral arguments, the parties represented to this court that both sides stipulated that the original VAC was validly formed. However, the stipulations presented to the trial court at the hearing on January 12, 2012, merely assert that the original VAC was in existence on December 13, 2011, not that it was properly formed in 1999.

-4-

contention, the petitioners submit the County Board lacked authority to create, destroy, or reorganize the original VAC, and therefore the County Board's December 13, 2011, resolution had no legal effect on the viability of the original VAC. In response, the respondents argue the County Board properly exercised its legislative authority to recognize a different VAC in 2011 and withdraw its recognition of the original VAC based upon allegedly improper behavior by the original VAC.

¶ 15   Before turning to the merits of this appeal, it is beneficial to first consider the nature of a VAC, a unique organization created by statute for the purpose of providing " 'needed services to eligible veterans.' " *Veterans Assistance Comm'n v. County Board*, 274 Ill. App. 3d 32, 35 (1995) (quoting 330 ILCS 45/9 (West 1992)). The Military Veterans Assistance Act (the Act) provides the statutory authority for the formation of a VAC, and it states that a VAC is formed when two or more of the veterans' organizations in a county decide to organize under a central assistance committee. 330 ILCS 45/9 (West 2010). Once properly formed under the statute, the VAC possesses all powers and duties of the individual veterans' organizations as provided under section 2 of the Act. *Id.* Section 2 specifically states, "the county board *shall* provide such sums of money as may be just and necessary to be drawn by *** the superintendent of any Veterans' Assistance Commission of the county, upon the recommendation of the *** Veterans' Assistance Commission." (Emphasis added.) 330 ILCS 45/2 (West 2010).

¶ 16   In the event that a county board denies the VAC's request for funding, the statute provides a mechanism for relief. Specifically, the superintendent of the VAC can circumvent the county board by filing a *mandamus* action requesting the court to order the county board to provide the VAC with the necessary funding. 330 ILCS 45/2 (West 2010). This leads us to the conclusion that the existence of any properly organized VAC is not dependent upon the "recognition" of the county board. Therefore, the County Board's 2011 resolution had no legal effect on the existence of either VAC. Rather, the requirements of the Act determine the legal status of any VAC.

¶ 17   Since the County Board's resolution had no legal effect on the existence of either VAC, the trial court incorrectly relied on the County Board's resolution when determining the second VAC was the only VAC entitled to county funding. We therefore vacate the trial court's order granting the respondents' counterclaim. We also vacate the portions of the order finding that the County Board had the authority to reorganize[3] the VAC and holding that the original VAC is not to be funded by the County Board.

¶ 18   However, this conclusion does not end our analysis because an additional question must be considered in this appeal. Here, the petitioners' amended complaint for declaratory judgment asked the trial court to declare that the original VAC remained intact. To address this issue, we turn to the language of the statute. Section 9 of the Act provides:

"In counties having 2 or more posts, camps, chapters or detachments of military veterans

---

[3]We note the County Board specifically denies it had any role in "reorganizing" the second VAC, asserting that it only recognized the second, already reorganized VAC as valid. As described above, the County Board lacked the authority to do so.

organizations as may be recognized by law, *a* central assistance committee may be organized to be known as *the* Veterans Assistance Commission of such county, composed of one delegate and one alternate from *each* of such posts, camps, units, and chapters or ship selected annually as determined by each post, ship, camp, or chapter." (Emphases added.) 330 ILCS 45/9 (West 2010).

¶ 19 We point out that the statute refers to *the* VAC as a "central" assistance committee composed of "one delegate and one alternate from *each* of such posts, camps, units, and chapters or ship selected annually as determined by each post, ship, camp, or chapter." (Emphasis added.) 330 ILCS 45/9 (West 2010). The legislature's decision to use these words strongly indicates the legislature intended for only one VAC to exist in each county. *Id.* Since each veterans' group must have a delegate and alternate in the county VAC, we find that there can only be one operating VAC in any given county, which includes each legally recognized post, ship, camp, or chapter in the county. *Id.*

¶ 20 We note that, with some legislative forethought, our lawmakers seemed to anticipate that a central assistance committee cannot efficiently function on behalf of veterans unless "each" veterans' organization in the county participates by sending a delegate and an alternate to the central assistance committee. Consequently, we conclude that the body claiming legal status as an operational VAC, with the power to compel county funding of the VAC by *mandamus* under the Act, must be an inclusive coalition that incorporates annually selected delegates and alternates from "each" of the veterans' organizations situated in the county.

¶ 21 However, it appears that any duly organized VAC can extinguish its own legal status, thereby eliminating its powerful statutory leverage to mandate county funding for the VAC's operations, by failing to maintain a collective endeavor that allows "each" post, ship, camp, or chapter to annually select its own delegates for the VAC. It is clear from the record that there are at least 12 active veterans' organizations located in Grundy County. However, it is unclear from this record whether there may be more than 12 veterans' groups in Grundy County, or whether "each" of the veterans' groups in the county is acting together, with the others, in one cohesive unit constituting a VAC, as defined by the Act.

¶ 22 In this case, the trial court did not focus on the issue of whether, after the 2011 organization, either group could be considered a viable VAC based on the statute mandating that "each" post, ship, camp, or chapter send its own delegates to the VAC. Without this finding, the trial court erroneously denied the petitioners' amended complaint because the amended complaint sought a declaration that the original VAC remained intact after the 2011 organization.

¶ 23 Accordingly, we remand the matter to the trial court with directions to conduct further proceedings to independently examine whether *either* purported VAC currently meets the statutory requirements of the Act at this time. After conducting additional proceedings on remand, we direct the trial court to make specific findings with respect to whether either purported VAC qualifies as the only central assistance agency at this time, as defined by statute, to serve the veterans of Grundy County.

¶ 24                            CONCLUSION

¶ 25        For the foregoing reasons, the judgment of the circuit court of Grundy County is reversed and remanded for further proceedings.

¶ 26        Reversed and remanded.