2016 IL App (3d) 130969

Opinion filed April 1, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| THE VETERANS ASSISTANCE COMMISSION OF GRUNDY COUNTY, ILLINOIS, and ELTON MONSON, | ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois. |
| Petitioners-Appellants and Cross-Appellees, | ) ) ) ) | |
| v. | ) ) | |
| THE COUNTY BOARD OF GRUNDY COUNTY, ILLINOIS; KENNETH BUCK, Commander of Morris American Legion Post No. 294; GLENN GAVRIL, Commander of Coal City American Legion Post No. 796; DOUGLAS MARTIN, Commander of Minooka American Legion Post No. 1188; ALAN LOVE, Commander of Grundy County Marine Corps League; RHODE BRONK, Commander/ Officiant of Disabled American Veterans Chapter 86; and GERALD BELT, Commander of Morris VFW Post No. 6049, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-13-0969 Circuit No. 11-MR-104 |
| Respondents-Appellees | ) ) | |
| (The County Board of Grundy County, Illinois, | ) ) ) | |
| Cross-Appellant). | ) ) ) | Honorable Robert C. Marsaglia, Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices McDade and Wright concurred in the judgment and opinion.

OPINION

¶ 1        The original respondents in this action, a second Veterans Assistance Commission (VAC or VAC 2), filed a timely petition for rehearing after we issued our second opinion in the matter. *Veterans Assistance Comm'n of Grundy County, Illinois v. County Board of Grundy County, Illinois*, 2015 IL App (3d) 130969.  VAC 2 asks this court to reconsider, solely, the portion of our opinion finding that their VAC was invalid.  *Id.* ¶ 47.  We granted rehearing, which by operation of law vacates our prior opinion in this appeal.   The remaining parties involved filed answers, and respondents filed a reply, pursuant to Illinois Supreme Court Rule 367(d) (eff. Dec. 29, 2009).  Upon rehearing, we now affirm our previous opinion.  See *Long v. City of New Boston*, 91 Ill. 2d 456, 462 (1982).  The only modification to our original offering in this appeal, however, is that we further clarify why we find VAC 2 an invalid VAC by addressing the parties' arguments on rehearing.

¶ 2        In 2002, the county board of Grundy County passed a resolution recognizing the original county VAC (VAC 1).  Elton Monson served as the duly-elected superintendent of VAC 1.  This action stems from a resolution passed by the Grundy County board in December of 2011, wherein the board voted to reorganize and recognize VAC 2 with Kenneth Buck serving as superintendent.

¶ 3        VAC 1 and Monson brought a declaratory judgment action in the Grundy County circuit court, requesting that the court declare the county board's resolution contrary to statute and without legal effect.  The county board and the six individuals who organized VAC 2 counterclaimed for injunctive relief prohibiting Monson from occupying the county-funded VAC office and from having access to VAC 2's files.  The trial court granted the injunction and denied

VAC 1's and Monson's complaint for declaratory judgment. The court found the county board had the authority to recognize that VAC 2 was not required to fund VAC 1.

¶ 4        VAC 1 and Monson appealed. In *Veterans Assistance Comm'n v. County Board*, 2013 IL App (3d) 120075, ¶ 23, this court reversed and remanded with instructions to make specific factual findings as to whether either purported VAC met the statutory requirements of the Military Veterans Assistance Act (Veterans Act) (330 ILCS 45/1 *et seq.* (West 2010)). *Veterans Assistance Comm'n*, 2013 IL App (3d) 120075, ¶ 23.

¶ 5        Following a hearing on remand, the trial court concluded that VAC 1 extinguished its own legal status by arbitrarily and capriciously excluding some posts and chapters of duly-recognized military veterans' organizations in the county. Specifically, that VAC 1 prevented those members from voting based upon restrictive bylaws that were not statutorily authorized. The trial court further recognized VAC 2 as the county's only valid VAC, and noted that not all chapters or posts had to participate in the VAC in order for the VAC to be operational.

¶ 6        VAC 1 and Monson appealed, claiming, *inter alia*, that VAC 1 did not extinguish its own legal status and that VAC 1's bylaws were valid, binding, and enforceable on the VAC 1 members. The county board of Grundy County cross-appealed, arguing that the trial court erred in the appointment of a special assistant State's Attorney to represent the legally extinguished VAC 1. On April 22, 2015, we issued an opinion affirming the trial court's order finding that VAC 1 extinguished its own legal status, but reversed the trial court's order recognizing VAC 2 as the county's operative VAC. We further found the trial court erred in granting VAC 1's and Monson's motion for appointment of a special assistant State's Attorney, vacating the appointment and ordering VAC 1 and Monson to reimburse the county board for attorney fees paid pursuant to the trial court's erroneous order.

3

¶ 7        We affirm the trial court's finding that VAC 2 was an invalid VAC.

¶ 8                                    BACKGROUND

¶ 9        In 1999, the various military veterans' organizations in Grundy County formed VAC 1. Monson served as the duly-elected superintendent. The county board passed a resolution in 2002 formally recognizing VAC 1 as the county's VAC pursuant to section 2 of the Veterans Act (330 ILCS 45/2 (West 2000)).

¶ 10        On November 28, 2011, Kenneth Buck, Alan Love, Rhode Bronk, Gerald Belt, Glenn Gavril, and Douglas Martin appeared before the media relations committee of the county board on behalf of the following veterans' organizations, respectively: Morris American Legion Post No. 294; Grundy County Marine Corps League; Disabled American Veterans, Chapter 86; Morris VFW Post No. 6049; Coal City American Legion Post No. 796; and Minooka American Legion Post No. 1188. The six representatives requested the county board "cease the current operation" of the original VAC and recognize a separate, second VAC. When appearing before the media relations committee, the six representatives advised the committee that Monson refused to allow delegates from their respective Grundy County veterans' organizations to participate in the decision-making processes of the original VAC.

¶ 11        On December 13, 2011, the county board passed a resolution entitled "RESOLUTION TO RECOGNIZE AND APPROVE A REORGANIZED VETERANS ASSISTANCE COMMISSION AND TO REPEAL GRUNDY COUNTY RESOLUTION NUMBER 2002-069." The resolution effectively repealed the 2002 resolution and recognized the second, newly organized VAC 2. Three days later, VAC 1 and Monson filed a complaint in the circuit court seeking a declaratory judgment that the board's resolution was without legal effect.

4

¶ 12        VAC 2 elected Kenneth Buck from Morris American Legion Post No. 294 as superintendent on December 23, 2011. Shortly thereafter, the county board sent a letter to Monson indicating that all income, benefits, and insurance for Monson as superintendent would terminate on December 31, 2011. The county board and VAC 2 then filed a counterclaim to VAC 1's and Monson's original declaratory action, requesting Monson demonstrate his authority to continue to act as the superintendent of the Grundy County VAC. The county board and VAC 2 further sought to enjoin Monson from conducting VAC business and to prohibit any further access to the county VAC office.

¶ 13        Following a hearing, the trial court entered an order declaring the county board had the authority to recognize VAC 2 and was not required to fund VAC 1. The court also granted the county board and VAC 2's counterclaim enjoining Monson from conducting VAC business and from occupying the VAC office.

¶ 14        VAC 1 and Monson appealed, arguing the county board lacked authority to create, destroy, or reorganize VAC 1. The county board and VAC 2 argued that the board properly exercised its legislative authority to withdraw its recognition of the original VAC based upon improper behavior and malfeasance by the original VAC. See generally *Veterans Assistance Comm'n v. County Board*, 2013 IL App (3d) 120075.

¶ 15        This court determined that the county board's resolution had no legal effect, as the existence of any properly organized VAC is not dependent upon the " 'recognition' " of the county board (relying on 330 ILCS 45/2 (West 2010)). *Veterans Assistance Comm'n*, 2013 IL App (3d) 120075, ¶ 16. However, the court's analysis did not end there. It went on to note that VAC 1 and Monson requested a declaration that VAC 1 was still intact. After an analysis of section 9 of the Veterans Act (330 ILCS 45/9 (West 2010)), the court concluded that the

5

legislature intended for only one VAC to exist in each county. *Veterans Assistance Comm'n*, 2013 IL App (3d) 120075, ¶ 19. The court further opined that a VAC must be an inclusive coalition with delegates and alternates from " 'each' " of the veterans organizations situated in the county. *Id*. ¶ 20 (quoting 330 ILCS 45/9 (West 2010)). As the trial court did not address that issue, this court reversed and remanded with directions to examine whether either purported VAC currently met the statutory requirements of the Veterans Act. *Id*. ¶ 23.

¶ 16     VAC 1 and Monson subsequently filed a motion to appoint Brett R. Geiger as special prosecutor for the representation of VAC 1. The trial court granted the motion over the objection of the county board, and the matter was set for hearing on remand.

¶ 17     At the evidentiary hearing, Kenneth Buck testified that prior to 2009, he was either a delegate or alternate to VAC 1 and that he participated and voted at those VAC meetings. Since sometime in 2009 through September 2011, he attended some of the VAC 1 meetings, but was not allowed to participate or vote on VAC matters. This occurred despite the fact that he was the elected commander of the Morris American Legion Post No. 294 and presented himself as that post's delegate to VAC 1.

¶ 18     Buck testified that VAC 1 approved a bylaw in March of 2009 that required a delegate or alternate to its VAC to submit a certified copy of that individual's DD-214. Buck attended the meeting when the bylaw requiring a DD-214 was passed, and was permitted to vote no to the rule change. A DD-214 is a certificate of release or discharge from active duty, and it is the exclusive means by which to establish honorable discharge. Buck presented a copy of his DD-214 to VAC 1 from which he had redacted his social security number, date of birth, and mailing address. Despite Buck's submission of the form, Monson and VAC 1 prohibited Buck from participating in or voting on VAC matters.

6

¶ 19    At some point in 2009, the Morris American Legion Post No. 294 stopped receiving both notices and delegate/alternate submission forms from VAC 1. Buck's post received no notices of VAC 1 meetings in either 2012 or 2013.

¶ 20    Finally, Buck testified as to the practices and procedures of VAC 2. VAC 2 has existed since December 17, 2011. Notice of its organizational meeting was sent to all posts and chapters of Grundy County-based military veterans' organizations. At that meeting, 6 of the then-existing 12 chapters or posts attended and approved the bylaws of VAC 2. The Minooka Veterans of Foreign Wars has since dissolved, leaving 11 posts existing in Grundy County as of the date of this action. VAC 2 has eight posts or chapters that regularly participate at its meetings with delegates or alternates. VAC 2 mails notices of its meetings and activities to all posts and chapters of military veterans' organizations in the county. VAC 2 does not reject delegates or alternates that appear on behalf of posts or chapters and allows those delegates and alternates to participate and vote on VAC affairs. VAC 2 is, according to respondents, serving numerous veterans on a monthly basis.

¶ 21    Alan Love testified that he is a member of the Marine Corps League. The national organization legally chartered the Marine Corps League in February 2011, and it is recognized under the Veterans Act. Love served as the league's commander. Soon after the league was chartered, Love was elected as the delegate to VAC 1. Love submitted his DD-214 to VAC 1, but also redacted his service number, social security number, and date of birth. VAC 1 rejected Love's submission and refused to seat him as a delegate at VAC 1 meetings. Love testified he attended a couple of VAC 1 meetings, but was never accepted as a delegate and not allowed to vote.

¶ 22    Elton Monson testified that he is currently acting as the superintendent of the original VAC of Grundy County. Monson has acted in that capacity for 14 years. Since being kicked out of the office in January of 2012, Monson stated he had paid for all the office supplies and phone cards necessary to operate the cell phones.

¶ 23    Monson testified that he would never deny a post the right to vote unless the member failed to comply with the bylaws. The bylaws provide that if three meetings are missed, the chapters are no longer part of VAC 1, but they can sign up to rejoin again. Monson believes conflict regarding the DD-214s occurred before December of 2011. He also testified that those DD-214s submitted by Buck and Love were insufficient as they redacted pertinent and necessary information.

¶ 24    Upon questioning, Monson agreed generally that all delegates and alternates are selected by the chapter or posts, and VAC 1 does not make that selection. Monson indicated that no persons had been denied services from VAC 1 because the post or chapter he or she belonged to was not active within VAC 1.

¶ 25    Monson further testified that only three or four posts had regularly attended meetings since 2011. Chapters and posts were notified of meetings by either knowing Monson's phone number or physically appearing at the VAC office. The delegate/alternate forms are sometimes mailed, sometimes picked up; retrieval and contact is generally informal. Monson conceded that VAC 2 has enjoyed greater attendance than his since December 2011.

¶ 26    As for VAC 1's practices, Monson testified that since December of 2011, VAC 1 has made one report of providing any services to veterans to its commission. From December 24, 2011, to May 2013, the minutes of VAC 1 do not reflect any assistance being given to veterans. There were no reports from Monson to the commission regarding disbursement of funds to any

8

veterans or for any other purpose despite VAC 1's own mandate per its bylaws that such reports and accountings occur on a monthly basis.

¶ 27    Donald Boyer testified that he served as the board chairman for VAC 1 starting in December of 2011. Since that time, no one has been denied the right to cast a vote for failing to submit a DD-214 or for failing to submit an alternate delegate form. Boyer then recalled, however, that Alan Love submitted a DD-214 in 2011. Boyer told Love he was not allowed to vote because Love had redacted certain information. Boyer testified he had no real doubt that Love was a veteran.

¶ 28    Kathleen Doran, who served as Monson's assistant for VAC 1, testified regarding some of VAC 1's practices and procedures, as well as its bylaws. VAC 1 does not have a listed telephone number. According to Doran, it does not notify all the posts and chapters of Grundy County-based military veterans' organizations of its meetings and does not feel that such notice is necessary. The meetings have not always occurred on consecutive months, and some monthly meetings simply did not occur. VAC 1 does not send any applications or forms for membership to each of the active posts or chapters.

¶ 29    The parties stipulated to VAC 1's bylaws, which contain restrictive provisions concerning post or chapter membership. Specifically, the bylaws provide for termination of a post's or chapter's membership in VAC 1 and states that "[i]f a post, detachment, camp or chapter representative, delegate or alternate is absent for three (3) meetings during the Veterans Assistance Commission fiscal year of December 1, through November 30, the organization shall no longer be a member of the Veterans Assistance Commission of Grundy County."

¶ 30    The bylaws restrictions only allow posts and chapters to elect their delegate and alternate at the same time once a year. Furthermore, and at issue here, the VAC 1 bylaws require that a

delegate or alternate of a post or chapter submit a DD-214 to the VAC to be recognized by the VAC as a voting member. These restrictions remained in place from December 2011 through the time of the evidentiary hearing.

¶ 31    As for VAC 2, its bylaws require only that its member military veterans' organizations be recognized by the Congress of the United States and the General Assembly of the State of Illinois. There are no requirements for delegates or alternates of posts and chapters to submit any documentation in order to participate in VAC affairs and activities.

¶ 32    At the close of testimony, the trial court admitted 11 exhibits of the Grundy County board. Among those exhibits was the board's petition alleging malfeasance on the part of Monson, along with an order from case No. 07-MR-79. That order denied the efforts of the State to void the first VAC 1 election in 2007, denied the request that Monson be removed from his post as superintendent, and found that VAC 1 violated the Open Meetings Act (5 ILCS 120/1.01 *et seq.* (West 2010)).

¶ 33    Following argument, the court stated that its purpose on remand was to make specific findings as to whether the original VAC had extinguished its own legal status by failing to maintain a collective endeavor that allows each post, ship, camp, or chapter to annually select its own delegates for the VAC.

¶ 34    The court then found that VAC 1 had arbitrarily and capriciously excluded members when it refused to accept their DD-214s in the fall of 2011. It noted that in order for the VAC to exist, not every existing post or chapter in the county had to participate. The court went on to hold that VAC 1 did, in fact, extinguish its own legal status by refusing to allow delegates to vote. Finally, the court held that VAC 2 properly formed in December 2011 and has continued to operate as a valid VAC in Grundy County since December 2011. Per the order, VAC 2 was to

10

continue its operation, hold meetings and elections as provided by statute, and provide each legally-charted post in Grundy County notice of its meetings and activities.

¶ 35       VAC 1 and Monson filed a motion to vacate and reconsider portions of the judgment. The trial court granted this motion in part, insofar as it modified a specific factual finding to show that VAC 2 was formed on December 17, 2011, and not December 12, 2011. The trial court denied the remainder of VAC 1's and Monson's motion.

¶ 36       Monson and VAC 1 appealed again, resulting in this court's now vacated April 22, 2015, opinion. *Veterans Assistance Comm'n*, 2015 IL App (3d) 130969. This court found that VAC 1 ceased being a valid VAC by refusing to seat delegates in violation of the inclusive nature of the Veterans Act. 330 ILCS 45/1 *et seq*. (West 2010). We further found that VAC 2 was not a valid VAC because not all of the veterans' organizations in Grundy County participated in the commission.

¶ 37       Subsequently, we granted VAC 2's petition for rehearing to reconsider our prior ruling that VAC 2 was not a valid commission.

¶ 38                                                    ANALYSIS

¶ 39       VAC 1 and Monson made two separate arguments that, for the purposes of their second appeal, were interrelated. First, that VAC 1 did not extinguish its own legal status and maintained a collective endeavor that allowed each post, ship, camp and chapter to annually select its own delegates; second, that the bylaws of VAC 1 requiring presentation of a DD-214 is a valid, binding, and enforceable bylaw of the Grundy County VAC 1. The county board and VAC 2 countered, contending that the trial court's ruling that VAC 1 extinguished its own legal status was not against the manifest weight of the evidence, and that VAC 1 engaged in improper, exclusionary conduct that violated the Veterans Act (*id*.). In our April 22, 2015 opinion, we

11

found that neither VAC 1 nor VAC 2 constituted a validly formed veterans' assistance commission pursuant to the Act, and therefore, neither legally existed. Regarding VAC 2's status, we echoed this court's ruling in the first appeal, upholding our interpretation of section 9 of the Veterans Act as requiring every veterans' organization in a county to participate in a VAC. 330 ILCS 45/9 (West 2010). Accordingly, we found VAC 2 invalid because it lacked an inclusive coalition of the veterans' organizations in Grundy County, in violation of the statute. *Id*.

¶ 40 VAC 2 petitioned for rehearing, arguing that a VAC need not have all veterans' organizations in the county actively participating in order to be deemed valid under the Veterans Act. Rather, VAC 2 asserts that as long as a VAC provides veterans' organizations with the opportunity to participate in the commission, it is inclusive and should be allowed to operate.

¶ 41 In their answers to VAC 2's petition for rehearing, VAC 1, Monson, and the Grundy County board make this same assertion. At long last, the parties in this action agree on something: all veterans' organizations in a county need not participate in a VAC for the VAC to be a valid one. VAC 1 and Monson, in particular, assert that "[n]owhere in 330 ILCS 45 does it state that it is mandatory that all county veterans' organizations must participate in that county Veterans Assistance Commission. A veteran's [*sic*] organization cannot be forced to join or participate in a Veterans Assistance Commission." Ultimately, we find their logic on this issue unpersuasive and uphold our prior ruling.

¶ 42 Along with rearguing their original claims, VAC 1 and Monson decry their lack of access to VAC 1's records in their answer to VAC 2's petition for rehearing. For the first time, they argue that VAC 2 was not properly formed because it never drafted a set of standard operating procedures. We need not address the latter argument, as it is deemed waived and beyond the

12

scope of a petition for rehearing, in accordance with Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013); see also *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1048 (2000) (noting the waiver rule applies to appellees as well as appellants in the context of a petition for rehearing). Furthermore, the grant of a petition for rehearing only allows parties to highlight for a reviewing court matters it might have overlooked or misapprehended, not to reargue their case. *Getto v. City of Chicago*, 392 Ill. App. 3d 232, 237 (2009). Thus, we confine ourselves to addressing VAC 1's and Monson's arguments from their direct appeal.

¶ 43        The board further highlights a point also made by VAC 2 in its petition; this court's logic in finding VAC 2 invalid is contrary to the intent of the Veterans Act and would allow one veterans' organization to frustrate an entire commission in any given county.

¶ 44        Statutory interpretation is at the heart of this case. At issue is section 9 of the Veterans Act, which provides in pertinent part, as follows:

> "§ 9. In counties having 2 or more posts, camps, chapters or detachments of military veterans organizations as may be recognized by law, a central assistance committee may be organized to be known as the Veterans Assistance Commission of such county, composed of one delegate and one alternate from each of such posts, camps, units, and chapters or ship selected annually as determined by each post, ship, camp, or chapter. When so organized a commission shall be clothed with all the powers and charged with all the duties theretofore devolving upon the different posts and chapters as provided in Section 2." 330 ILCS 45/9 (West 2010).

13

¶ 45 If the language of a statute is clear and unambiguous, then there is no need to resort to other means of construction. *In re B.L.S.*, 202 Ill. 2d 510, 515 (2002). If there is no more than one reasonable interpretation of the statutory language, then the statute is not ambiguous. *Id.* On the other hand, when statutory language is susceptible to more than one reasonable interpretation, it is appropriate to resort to other aids of construction to determine legislative intent. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010) (citing *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009)). Furthermore, "[s]tatutes are to be construed in a manner that avoids absurd or unjust results." *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990) (citing *Carson Pirie Scott & Co. v. Department of Employment Security*, 131 Ill. 2d 23, 45 (1989)).

¶ 46 In the case *sub judice*, there is no ambiguity in the statute. We acknowledge there is a distinct difference between VAC 1's intentional acts excluding certain veterans' organizations, and VAC 2's incomplete coalition of the existing veterans' organizations within Grundy County. However, we cannot breathe meaning into an unambiguous statute to account for this distinction without running afoul of the rules of statutory construction. Under the plain meaning of the statute, both VACs have unwittingly extinguished their own existence.

¶ 47 In our first decision in this case (*Veterans Assistance Comm'n v. County Board*, 2013 IL App (3d) 120075), a panel of this court concluded that section 9 is properly construed to mean that there can only be one VAC in each county. Specifically, this court found:

> "We point out that the statute refers to *the* VAC as a 'central'
> assistance committee composed of 'one delegate and one alternate
> from *each* of such posts, camps, units, and chapters or ship
> selected annually as determined by each post, ship, camp, or

14

chapter.' (Emphasis added.) 330 ILCS 45/9 (West 2010). The legislature's decision to use these words strongly indicates the legislature intended for only one VAC to exist in each county. *Id*. Since each veterans' group must have a delegate and alternate in the county VAC, we find that there can only be one operating VAC in any given county, which includes each legally recognized post, ship, camp, or chapter in the county. *Id*.

We note that, with some legislative forethought, our lawmakers seemed to anticipate that a central assistance committee cannot efficiently function on behalf of veterans unless 'each' veterans' organization in the county participates by sending a delegate and an alternate to the central assistance committee. Consequently, we conclude that the body claiming legal status as an operational VAC, with the power to compel county funding of the VAC by *mandamus* under the Act, must be an inclusive coalition that incorporates annually selected delegates and alternates from 'each' of the veterans' organizations situated in the county." (Emphasis in original.) *Id*. ¶¶ 19-20.

¶ 48       The statute clearly and unambiguously provides for only one VAC in each county and, to be valid and operational, it must be comprised of one delegate and one alternate from each of the duly-recognized veterans' organizations in the county. Such a reading is further reinforced by the responsibilities vested in the VAC when organized, specifically, that the "commission shall be clothed with all the powers and charged with all the duties theretofore devolving upon the

15

different posts and chapters as provided in Section 2." 330 ILCS 45/9 (West 2010). If the power to compel the disbursement of funds through *mandamus* is transferred to the VAC upon organization, it is logical that there can only be one and that each post and chapter must participate. Furthermore, it is consistent with the fact that the statute mandates that the county provide the office for the VAC and furnish it with all the necessary supplies. 330 ILCS 45/10 (West 2010). It seems implausible, indeed, even unreasonable, that the legislature would require the county to provide offices and supplies for multiple VACs, as well as compensation for multiple superintendents and his or her employees.

¶ 49 With that statutory framework in mind, we again turn to the parties' arguments regarding the existence of their respective VACs. VAC 1's argument that its bylaws are valid and that there was no evidence presented that demonstrated exclusionary behavior during the relevant timeframe is without merit. Monson's own testimony confirms that VAC 1 prevented Buck and Love from voting in the fall of 2011 based on their redacted DD-214 forms. In addition, the trial court found that VAC 1 excluded six posts from seating delegates and alternates at its meetings in the fall of 2011. While Boyer first stated that VAC 1 did not prevent any members from voting, he later admitted that he personally informed Love he was not allowed to vote based on the redacted information in his DD-214 submission. This is despite the fact that Boyer never had any real doubt that Love was an honorably discharged veteran. In short, the record is replete with evidence that petitioners excluded members from participation in VAC 1.

¶ 50 We, therefore, find that VAC 1's restrictive bylaws contravene the plain language of the statute and the spirit of the Veterans Act. 330 ILCS 45/9 (West 2010). Section 9 is conspicuously devoid of any language conferring authority on the VAC itself to choose the delegate and alternate for the member post or chapter, nor does it state that the VAC can restrict

16

the post or chapter's voting privileges without proof of honorable discharge. To the contrary, the superintendent is the only individual required to be an honorably discharged veteran of the armed forces of the United States. 330 ILCS 45/10 (West 2010). There is no requirement that the delegates or alternates be veterans. Indeed, it is up to the individual posts to determine who will represent its interests within the commission, and many nonveterans would be just as capable and willing to provide their services. The best example we can surmise is the son or daughter of a veteran, who, while not having served in the armed forces themselves, are still committed to helping veterans and their families.

¶ 51    By refusing to seat delegates, VAC 1 removed itself from the purview of the statute. It is no longer a functioning central committee composed of a delegate and alternate from each veterans' organization in the county working as a cohesive unit and, as such, is not a valid VAC.

¶ 52    The flipside of that coin, of course, is that VAC 2 is also not a valid VAC. Due to the infighting among the various veterans' organizations over control of the VAC, VAC 2's membership does not consist of a delegate and alternate from each post, ship, camp or chapter currently operating in Grundy County. According to Buck, eight posts or chapters regularly participate at its meetings. From December of 2011 through June of 2013, there were 12 total military veterans' organizations based in Grundy County. In July of 2013, that number dropped to 11. As we stated above, section 9 is unequivocal in its requirement that a VAC must have one delegate and one alternate from each post to be duly organized. Eight participating members out of eleven, while a majority, does not qualify it as an inclusive coalition.

¶ 53    Our ruling that section 9 contains an unequivocal requirement that a VAC have one delegate and one alternate from each post in the county in order to be duly organized was consistent with the plain meaning of the statute. Upon further review, we clarify that in order for

17

a VAC to have an inclusive coalition, every veterans' organization in the county needs to agree to membership in a VAC and, the VAC must allow every member organization the opportunity to fully participate in order for a VAC to be valid under section 9 of the Veterans Act. VAC 2 has not fulfilled this requirement and is therefore not a valid VAC under the statute.

¶ 54 Finally, we point out that under section 9 of the Veterans Act, there is no requirement that a county have a VAC in order for the various veterans' organizations to receive county funding. The VAC is a discretionary creature; one "may" be organized in a county with multiple posts. It seems relatively clear that the underlying rationale of a VAC is to streamline the process and facilitate the assistance to veterans in counties with multiple posts or chapters. The condition precedent for achieving that convenience and financial underwriting by the county is that all the individual units agree to membership as set forth in the statute. In other words, a VAC is neither a necessity nor a right; it is a privilege conditioned upon the cooperation of all covered units.

¶ 55 What is also glaringly obvious is that the legislature did not intend or foresee the petty behavior at issue here. There can be no doubt that this litigation, resulting originally from an ego driven power grab, has resulted in nothing more than the wasting of funds intended to help veterans. To be clear, the necessity for this litigation arose from VAC 1 and Monson's "my way or the highway," statutorily unauthorized manner of dealing with member veterans' groups.

¶ 56 As neither VAC 1 nor VAC 2 meets the statutory requirements, we find no validly formed VAC operating in Grundy County. Accordingly, we affirm the trial court's order finding that VAC 1 extinguished its own legal status and reverse the trial court's order recognizing VAC 2 as the county's operative VAC.

¶ 57 Cross-Appeal of Respondent Grundy County Board

18

¶ 58    As previously mentioned, VAC 1 and Monson moved for the appointment of a special assistant State's Attorney to represent them on remand. The trial court granted their motion and appointed attorney Brett R. Geiger.

¶ 59    The county board of Grundy County appealed that appointment, arguing that the State's Attorney's office has no statutory duty to represent the legally extinguished VAC and that the county board has no obligation to provide funds to compensate private counsel. The county board also requests repayment of fees paid pursuant to the court's order.

¶ 60    The parties are at odds over the holding of *Hazen v. County of Peoria*, 138 Ill. App. 3d 836 (1985). In *Hazen*, plaintiffs, Veterans Assistance Commission of Peoria County (Peoria VAC) and Richard Hazen, as superintendent of the Peoria VAC, appealed from an order denying them a writ of *mandamus* against the county board of Peoria County. Defendants, the county of Peoria and the Peoria County board, cross-appealed from the trial court's order requiring the county to pay the fees of private counsel retained by plaintiffs. *Id*. at 838. Regarding the attorney fees, the trial court held that the State's Attorney's office could not represent both the Peoria VAC and the county board, therefore, the county is liable for the cost of retaining private counsel to represent the Peoria VAC. *Id*. at 841-42.

¶ 61    After analyzing the statutorily prescribed duties of the State's Attorney pursuant to section 5 of the Counties Code (Ill. Rev. Stat. 1983, ch. 14, ¶ 5 (now 55 ILCS 5/3-9005 (West 2012))), the *Hazen* court found that the State's Attorney had no duty to represent other units of local government — including the Peoria VAC. *Hazen*, 138 Ill. App. 3d at 842. The county board had no obligation to provide funds from the county general fund to compensate special counsel for the Peoria VAC in that case, where the State's Attorney represented the county in litigation involving the VAC. The court accordingly held that the attorney for the Peoria VAC

19

was not entitled to compensation from general county funds but, rather, must be paid from Peoria VAC funds. *Id.*

¶ 62 This determination is consistent with our supreme court's holding in *Makowicz v. County of Macon*, 78 Ill. 2d 308, 314-15 (1980), where it found that employees and agents in a properly constituted VAC are employees or agents of the VAC, not the county board. It is further supported by the specific statutory language of section 10, which states that "[t]he superintendent and other employees shall be employees of the Veterans Assistance Commission, and no provision in this Section or elsewhere in this Act shall be construed to mean that they are employees of the county." 330 ILCS 45/10 (West 2010).

¶ 63 *Hazen* is applicable to the case at bar and militates against a finding that VAC 1 is entitled to the appointment of a special assistant State's Attorney. Furthermore, pursuant to section 3-9005 of the Counties Code, the duty of the State's Attorney in defending proceedings extends to "all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county." 55 ILCS 5/3-9005(a)(4) (West 2012). Given that neither VAC 1 nor Monson is a county or state officer, the county has no obligation to fund a VAC's lawsuit or legal defense.

¶ 64 VAC 1 and Monson set forth a number of contentions in regard to attorney fees, which we touch upon briefly only to dispel them. First, their brief implies that the *Hazen* court found that if a VAC requested an appointment of a special prosecutor, then such appointment could be made at the trial court's discretion. This is a misinterpretation. The court simply noted that even if they were to find that the VAC was a department of county government entitled to legal representation by the State's Attorney, the private counsel retained by the VAC in that case still does not qualify for compensation from general county funds. *Hazen*, 138 Ill. App. 3d at 842.

20

The court opined hypothetically that in the event the State's Attorney served as the legal advisor of the VAC and the VAC declined to accept the advice of the State's Attorney, the VAC would be obligated to request appointment of special counsel by the circuit court. The *Hazen* VAC made no such request. The court only advanced that theoretical argument to highlight that the VAC never requested counsel. The statement is largely *dicta*, having no bearing on the court's ultimate resolution of *Hazen*, *i.e.*, that the VAC is a unit of local government and thus, the county is under no obligation to indemnify the VAC for private counsel.

¶ 65　　　　Second, VAC 1 and Monson contend that "it would be fundamentally unfair to allow the county to fund its own legal defense and prosecution, *and* the Second VAC's legal defense and prosecution, while preventing the first VAC \*\*\* from being represented adequately in this proceeding." We note that while the individuals within VAC 2 are represented by private counsel, the record is unclear as to whether the county is actually funding their legal defense. More importantly, it is irrelevant to the outcome of this case. If the county did, in fact, defray the cost of legal services for VAC 2, it is not seeking relief or reimbursement in its cross-appeal. The issue is not before us.

¶ 66　　　　We find the trial court erred in granting VAC 1's and Monson's motion for appointment of a special assistant State's Attorney and accordingly vacate the appointment. We further find that the county board of Grundy County should be reimbursed by VAC 1 and Monson for any attorney fees paid to date under the trial court's erroneous order of August 9, 2013. We remand to the circuit court for a proper calculation of those fees.

¶ 67　　　　　　　　　　　　　　　　CONCLUSION

21

¶ 68        For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed in part, reversed in part, and remanded with directions to calculate those attorney fees the county board should be reimbursed.

¶ 69        Affirmed in part, reversed in part, and remanded with directions.