DICK HAZEN, Superintendent of the Veterans Assistance Commission of Peoria County, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. THE COUNTY OF PEORIA *et al.*, Defendants-Appellees and Cross-Appellants.

Third District   No. 3—85—0216

Opinion filed November 22, 1985.

Joe R. Vespa and Michael W. Sonnemaker, both of Sonnemaker, Sonne-maker & Vespa, P.C., of Peoria, for appellants.

John A. Barra, State's Attorney, of Peoria (Chris L. Fredericksen, Assistant State's Attorney, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

This appeal is brought by plaintiffs, Veterans Assistance Commission of Peoria County (VAC) and Richard Hazen, superintendent of the VAC, from an order denying them a writ of *mandamus* against the county board of Peoria County and granting the county of Peoria an injunction which compels plaintiffs to comply with the rules and regulations of the Department of Public Aid. Defendants, the county of Peoria and the county board of Peoria, have cross-appealed from orders which require the county to pay the fees of private counsel retained by plaintiffs for this litigation.

The facts are not in dispute. Prior to 1983 the Veterans Assistance Commission of Peoria County was primarily funded by a real estate tax levied by the Peoria County Board for veterans assistance purposes pursuant to section 28a of the Counties Act (Ill. Rev. Stat. 1983, ch. 34, par. 506). The maximum tax rate permitted by the statute for Peoria County is .03% of the assessed value of all taxable property. In August of 1983, the county board, with the approval of Hazen, applied for supplemental funding for indigent veterans from the Department of Public Aid. Funds totalling $339,000 were received from the Department and were dispensed to veterans by the VAC.

Then the Department performed an audit of the procedures and records used by the VAC for the period ending April 30, 1984, and discovered a number of areas of noncompliance with Department regulations. According to a letter dated August 7, 1984, to Hazen from the Department, "corrective action" needed to be taken as follows: (1) VAC funds are to be maintained separately from all other county funds; (2) the deficiencies contained in the detailed audit findings must be corrected; and (3) the Department's regional office must assign staff to help the County and the VAC bring their general assistance programs into compliance with Department regulations. This litigation involves only the question of compliance with the deficiencies noted in the audit findings.

Hazen submitted the VAC budget request for fiscal year 1984-85 to the county board finance committee in September or October of 1984. The VAC requested $360,000 which would require a tax rate of .03%, but the county board approved a levy of $236,544 which would require a tax rate of .02%, the rate which must be levied in order to qualify for State funds to supplement local funds for public aid pur-

poses. (Ill. Rev. Stat. 1983, ch. 23, par. 12—21.13.) The county board directed the VAC to comply with rules and regulations of the Department of Public Aid so that the remainder of the funds needed could be obtained from the State. Hazen and the VAC refused to attempt compliance and instead filed a petition for *mandamus* and injunctions to compel the county board to levy the full amount requested by the VAC. The defendants counterclaimed for a declaratory judgment and for an injunction or a writ of *mandamus* to require plaintiffs to comply with the Public Aid Code. After a hearing before the circuit court of Peoria County, the court ruled in favor of defendants on both the petition and the counterclaim, except the court required the county to pay plaintiffs' attorney fees. This appeal followed.

■ Plaintiffs first contend that the trial court erred in refusing to issue a writ of *mandamus* to compel the county board to provide "just and necessary" funds for relief of indigent veterans under "An Act to regulate the granting of assistance to indigent war veterans and their families," more commonly known as the Bogardus Act (Ill. Rev. Stat. 1983, ch. 23, par. 3081 *et seq.*). Section 2 of that Act provides, *inter alia*, for the VAC to recommend the amount of funds that are needed, and if the county board "fails or refuses after such recommendations to provide any just and necessary sums of money for such assistance," then the VAC superintendent "shall apply to the circuit court of the district or county for relief by mandamus upon the *** county board requiring *** it to pay, or to appropriate and pay such sums of money, and upon proof made of the justice and necessity of the claim, the circuit court shall grant such relief." Ill. Rev. Stat. 1983, ch. 23, par. 3082.

Plaintiffs acknowledge that *mandamus* will not lie to compel the performance of an official duty in a particular manner where the exercise of judgment or discretion is involved. (*Chicago Association of Commerce & Industry v. Regional Transportation Authority* (1981), 86 Ill. 2d 179, 427 N.E.2d 153.) However, they insist that here they are not asking for review of a discretionary act but rather are seeking to compel the county board to proceed to exercise its discretion which it has previously failed to do. Simply put, plaintiffs claim that the county board failed to exercise *any* discretion when it refused to levy real estate taxes for the full amount recommended by the VAC and instead levied at a rate of only .02% which is the qualifying rate for supplemental State funds.

In the case of *Ickes v. Board of Supervisors* (1953), 415 Ill. 557, 114 N.E.2d 669, the Supreme Court of Illinois reviewed the issuance of a writ of *mandamus* where the county board had refused to appro-

priate the full $7,400 recommended by the VAC for salaries of the superintendent and the secretary and instead had appropriated only $4,000. The court reversed the circuit court order and stated:

"Analyzing the statute in question, it is apparent that the county board must make an appropriation upon the recommendation of the veterans assistance commission. That appropriation, however, can be no more than the maximum allowed by the statute. The act does not say that the appropriation must be in the amounts recommended by the commission. *** [A] writ of *mandamus* will not lie to challenge the sufficiency of an appropriation made by the board where the amount to be appropriated lies within the discretion of the board." 415 Ill. 557, 561-62, 114 N.E.2d 669, 671.

The case before us requires application of the same principle as did the case of *Ickes v. Board of Supervisors*. The Peoria County Board did not refuse to levy taxes to provide funds for the assistance of indigent veterans but rather refused to provide all the funds requested by the VAC from real estate tax revenues. The county board has determined that the needs of indigent veterans in the county of Peoria can better be met by utilizing State assistance funds which are available to the county provided that certain requirements are met. That determination by the county board is properly a discretionary judgment made by the officials elected to make such decisions. A writ of *mandamus* cannot be used to review the sufficiency of the tax levy approved by the county board in this case.

■ Furthermore, a careful reading of the statute in question discloses no requirement that all the just and necessary funds be provided from a tax on real property. The county board chose to authorize only such property taxes as were sufficient to qualify for State assistance and then to provide the remainder of the requested funds from the State.

■ Plaintiffs also contend that the injunction requiring the VAC to comply with the rules and regulations of the Department of Public Aid was improper because it will mean that the VAC will cease to exist and will become "merely a branch office of the Department of Public Aid." This complaint is based upon the statutory requirement contained in section 9 of the Bogardus Act (Ill. Rev. Stat. 1983, ch. 23, par. 3089), as follows:

"If general assistance funds are allocated to a county for assistance to indigent war veterans and their families as provided in 'The Illinois Public Aid Code,' the administration of such funds and of county tax funds levied for such purpose as pro-

vided in [Ill. Rev. Stat. 1983, ch. 34, par. 506], shall be subject to the supervision of the State Department of Public Aid in accordance with the provisions of 'The Illinois Public Aid Code.' "

The report of the audit performed by the Department lists at least 15 specific items which are not in compliance with Department regulations. The three deemed most serious were the personnel classifications, record-keeping, and medical transportation. According to a Department official who testified at the hearing, one employee of the VAC was being paid at the level of an "executive secretary" classification when in fact her duties were those of a "bookkeeper 2." Apparently superintendent Hazen and two clerk-typists lacked the education necessary for their classifications, although exceptions to the regulations might be made. As to record-keeping, the Department regulations specify the forms and documentation that are required for each case. The VAC does not keep the required records. Finally, transportation of recipients to hospitals or other medical providers must be treated as a medical expense. Apparently, Hazen had rented cars or had used his own car and had paid the cost of such transportation out of the administrative expense budget. Hazen also testified in court that he would no longer be able to provide certain kinds of emergency assistance to veterans and that he would no longer be able to perform certain other services. However, the Department witness indicated that other sources of such assistance would be available to the veterans just as they are to nonveterans.

Considering the provisions of the applicable statutes, quoted above, we believe the trial court correctly ruled that the VAC must comply with the regulations of the Department. Plaintiffs have not argued that the statutory provisions are invalid or unconstitutional—only that they are bad policy. That is not a pronouncement which the courts are free to make. The legislature in its wisdom has concluded that both State and county funds allocated for relief of indigent veterans should be administered pursuant to the regulations of the Department of Public Aid whenever a county elects to seek State assistance funding. The trial court did not err in requiring plaintiffs to comply with Department regulations.

On cross-appeal, defendants assert as error the order of the trial court requiring the county to pay plaintiffs' attorney fees of approximately $3,700 for this litigation. The trial court ruled that the VAC was authorized by statute to seek *mandamus* in this situation where its request for funds had not been fully granted by the county board, that the State's Attorney's office could not represent both the VAC and the county board, and, therefore, that the county is liable for the

cost of retaining private counsel to represent the VAC.

■ Defendants argue, first, that the VAC is *not* an office or department of county government entitled to legal representation by the State's Attorney but by statutory definition is a "local governmental unit." (Ill. Rev. Stat. 1983, ch. 23, par. 2—14.) Section 5 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1983, ch. 14, par. 5) states in pertinent part:

> "The duty of each State's attorney shall be:
>
> (1) To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court of his county, in which the people of the State or county may be concerned.
>
> (2) ***
>
> (3) To commence and prosecute all actions and proceedings brought by any county officer in his official capacity.
>
> (4) To defend all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county."

Since the State's Attorney has no duty to represent other units of local government, the county board has no obligation to provide funds from the county general fund to compensate special counsel for the VAC in this case, where the State's Attorney represents the county in litigation involving the VAC. Accordingly, we hold that the attorney for the VAC is not entitled to compensation from general county funds but rather must be paid from VAC funds. This holding is consistent with the decision of the Supreme Court of Illinois in *Makowicz v. County of Macon* (1980), 78 Ill. 2d 308, 399 N.E.2d 1302, that the superintendent and other VAC employees are employees of the VAC and not of the county board.

■ We also hold that even if the VAC were a department of county government entitled to legal representation by the State's Attorney, the private counsel retained by the VAC in this case does not qualify for compensation from general county funds. If the State's Attorney is the legal adviser of the VAC and the VAC declines to accept the advice of the State's Attorney (as apparently was the case here), the VAC would be obligated to request appointment of special counsel by the circuit court. (Ill. Rev. Stat. 1983, ch. 14, par. 6.) No such request was made in this case.

In *Hutchens v. Wade* (1973), 13 Ill. App. 3d 787, 789-90, 300 N.E.2d 321, 322-23, the court said:

> "The appointment of a special state's attorney involves the exercise of judicial discretion in the determination of whether a

contingency authorizing the exercise of such power has arisen. *** [F]or a meaningful exercise of judicial discretion, the court's attention must in some way be directed to the subject matter requiring a decision. There is no showing that this was done in the case for which attorneys' fees are sought here. In the absence of appointment, the plaintiffs are not entitled to payment from county funds."

The same ruling would apply in the case before us. Without a judicial decision to appoint counsel for the VAC at an early stage of this litigation, plaintiffs are not entitled to obtain payment of attorney fees from county funds after the suit is concluded. However, we are of the opinion that counsel is entitled to compensation from VAC funds for services rendered.

For the reasons stated, we affirm the judgment of the trial court in favor of defendants on the complaint and on the counterclaims, and we reverse the order requiring the defendants to pay plaintiffs' attorney fees.

Affirmed in part; reversed in part.

HEIPLE, P.J., and STOUDER, J., concur.