VETERANS ASSISTANCE COMMISSION OF WILL COUNTY, Plaintiff-Appellant and Cross-Appellee, v. THE COUNTY BOARD OF WILL COUNTY *et al.*, Defendants-Appellees and Cross-Appellants.

Third District    No. 3—94—0392

Opinion filed June 15, 1995.—Modified on denial of rehearing August 29, 1995.

Burmila & Thomas, P.C., of Joliet (Edward A. Burmila, Jr., and Charles E. Thomas, of counsel), for appellant.

Stephen S. Swofford, of Hinshaw & Culbertson, of Chicago (Nancy G. Lischer, of counsel), for appellees.

James P. Brown, of Will County Legal Assistance Program, Inc., of Joliet, and James T. Scott, Assistant State's Attorney, of Belleville, for *amicus curiae.*

JUSTICE LYTTON delivered the opinion of the court:

The Veterans Assistance Commission of Will County (the VAC) brought this declaratory judgment action against the County Board of Will County (the board) to determine which party possessed authority to establish benefit levels for needy veterans, establish salary levels for the VAC's personnel and promulgate rules pertaining to the operations of the VAC under the Military Veterans Assistance Act (the Act) (330 ILCS 45/0.01 *et seq.* (West 1992)). The trial judge found for the county board, and the VAC appealed. The trial judge also ruled that the VAC's attorney should not be disqualified for a conflict of interest and that the board must transfer VAC funds to the budgetary line for professional services to permit payment of the VAC's attorneys. The board cross-appealed on these issues.

## FACTS

The plaintiff veterans assistance commission is a local governmental unit established under Military Veterans Assistance Act (330 ILCS 45/0.01 *et seq.* (West 1992)). Defendant county board is a local governmental unit organized and operated under the executive form of government pursuant to the County Executive Law (55 ILCS 5/2—5001 *et seq.* (West 1992)).

The parties stipulate that the VAC has no authority to levy taxes or generate revenue. Instead, VAC funds may be drawn from a number of sources, including the county's general corporate fund, a tax levied to support plaintiff's operations and/or moneys from the Illinois Department of Public Health. In Will County, the board has chosen to fund the VAC through the county's general corporate fund.[1] The parties also stipulate that Will County has no established guidelines for the compensation of county employees.

On November 18, 1993, the board passed resolution 93—272, which set monthly benefits for veterans in need of assistance. On November 29, 1993, the VAC set identical monthly benefits for food, personal needs, utilities, telephone and transportation. However, the

---

[1] When funds are allocated pursuant to the Illinois Public Aid Code (305 ILCS 5/1—1 *et seq.*(West 1992)), the Military Veterans Assistance Act mandates compliance with the Illinois Public Aid Code and the regulations of the Department of Public Aid (330 ILCS 45/9, 10 (West 1992)). Since funding in this case is provided through the county's general corporate fund, the parties agree that these provisions are not applicable.

benefit amounts for shelter assistance were different. The board established monthly benefit levels for shelter at $100 for a single person and $200 for a family; the VAC set monthly shelter assistance at $165 for a single person and $265 for a family. The defendants then refused to distribute shelter assistance in the amounts prescribed by the VAC.

For the fiscal year ending November 30, 1994, the VAC approved an annual salary of $46,000 for its superintendent, but the board appropriated $23,700; while the VAC approved an annual salary of $19,500 for its secretary/assistant, the board appropriated $16,640. The defendants then refused to pay the superintendent and secretary/assistant the amounts authorized by the VAC.

On December 8, 1993, the county executive signed an order appointing the county auditor to oversee the distribution of money and supplies to veterans and their families. On January 20, 1994, the board adopted resolution 94—24, which purported to amend parts of the VAC's handbook, including the standards for determining need, veterans' benefit levels and VAC rules.

On February 22, 1994, the VAC filed a complaint for declaratory relief in order to ascertain the respective authority of the VAC and the board. On April 29, 1994, the trial judge ruled that: (1) the Act authorized the county board to establish veterans' benefit levels and VAC salaries; (2) the VAC's authority was limited to providing input for consideration by the board; (3) resolutions 93—272 and 94—24 constituted lawful exercises of the board's authority; (4) the statutory bilateral oversight of the VAC and the board was subject to the board's rules pertaining to the operations of the VAC; and (5) the VAC had no authority to adopt rules that conflict with those promulgated by the board. The VAC appeals from these findings.

## ANALYSIS

■ The primary rule in interpreting and construing a statute is that the intention of the legislature should be ascertained and given effect; a court should first look to the statutory language as the best indication of legislative intent. (*Envirite Corp. v. Illinois Environmental Protection Agency* (1994), 158 Ill. 2d 210, 632 N.E.2d 1035.) The purpose of the Military Veterans Assistance Act is to provide needed assistance to honorably discharged veterans, their families, and the families of deceased veterans. (330 ILCS 45/2 (West 1992).) The Act authorizes the organization of veterans assistance commissions (VACs), consisting of one delegate and one alternate from each post, camp, unit, chapter and ship of each legally recognized military veterans organization within the county. (330 ILCS 45/9 (West 1992).)

When properly organized, a VAC constitutes a local governmental unit under the Illinois Public Aid Code. (305 ILCS 5/2—14 (West 1992).) In interpreting the Act, we must construe it "so that the [VAC] shall provide needed services to eligible veterans." 330 ILCS 45/9 (West 1992).

The executive powers of each VAC are vested in an elected superintendent. (330 ILCS 45/10 (West 1992).) Subject to rules formulated by the VAC, the superintendent can select employees from among honorably discharged military veterans or their surviving spouses. (330 ILCS 45/10 (West 1992).) The VAC's superintendent and employees are not considered employees of the county, and they are exempt from the provisions of civil service acts and laws of the State. 330 ILCS 45/10 (West 1992).

Section 2 of the Act mandates that upon the recommendation of the VAC, "the county board shall provide such sums of money as may be just and necessary" to assist veterans and their families. (330 ILCS 45/2 (West 1992).) Although the board has discretion to provide additional funds, it has no discretion over the threshold "just and necessary" sum. Section 2 of the Act states that a VAC superintendent may seek a writ of *mandamus* when the county board fails to appropriate just and necessary amounts for veterans' benefits. (330 ILCS 45/2 (West 1992).) The word "shall" also indicates a mandatory legislative intent. See *Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 566 N.E.2d 1283.

■ Upon the recommendation of the VAC, the county board must approve and appropriate additional sums to compensate the VAC's superintendent and employees. (330 ILCS 45/10 (West 1992).) Where, as here, the county has no established employee salary guidelines, the board is required to compensate the VAC superintendent and employees in "a just manner." (330 ILCS 45/10 (West 1992).) While the word "approve" connotes the exercise of discretion, judicial relief will lie in cases where the power to approve has been abused by unreasonable, arbitrary or discriminatory action. *Gustafson v. Wethersfield Township High School District 191* (1943), 319 Ill. App. 255, 49 N.E.2d 311.

The defendants justify the board's setting of benefits and salaries and the amending of the VAC handbook by citing the following provision of section 9 of the Act:

> "The [VAC] superintendent and the president or chairman of the county board, or some other county officer appointed by him, shall have general oversight of the distribution of all moneys and supplies appropriated by the county for the benefit of military veterans and their families, *subject to such rules, regulations,*

*administrative procedures or audit reviews as are necessary as approved by the county board* to carry out the spirit and intent of this Act. No warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or claim, approved by the superintendent of the [VAC]." (Emphasis added.) (330 ILCS 45/9 (West 1992).)

We believe the above reference to "rules, regulations, administrative procedures and audit reviews" concerns procedural oversight in the distribution of funds and supplies, not the broad exercise of powers claimed by the board in this case. This portion of section 9 speaks of rules, regulations, administrative procedures or audit reviews "as approved by the county board." (330 ILCS 45/9 (West 1992).) The term "approve" is not the same as the words "formulate," "enact" or "authorize." To "approve" is to "confirm, ratify, sanction, or consent to some act or thing done by another." (Black's Law Dictionary 94 (5th ed. 1979); see also *Gustafson*, 319 Ill. App. 255, 49 N.E.2d 311 (which defines the power of approval as the option to sanction or disapprove an act submitted).) The rules and regulations provision of section 9 authorizes the board to approve or disapprove VAC procedures pertaining to the oversight and the distribution of money and supplies; it does not empower the board to create rules that unilaterally alter veterans' benefit levels, VAC salary levels or VAC rules.

Defendants also cite *Ickes v. Board of Supervisors* (1953), 415 Ill. 557, 562, 114 N.E.2d 669, 671, where the supreme court stated, "What is a proper compensation is certainly within the discretion of the board." However, the holding in *Ickes* does not give pervasive authority to the board to unilaterally establish or change benefit levels, salaries or rules. At the time that *Ickes* was decided, the Act provided maximum VAC salary levels based upon the size of the county. The supreme court held that a circuit court could not order the board to appropriate this maximum amount. The salary ceilings have since been deleted. The issue before us today is not whether the VAC is entitled to the appropriation of the maximum amount allowed by statute, but what remedy, if any, is available when a VAC believes that its county board has failed to fulfill its minimal funding obligations.

While our conclusion that the board exceeded its authority is based in part upon statutory language and structure, we are also mindful of our obligation to construe the Act so that VACs shall provide needed services to eligible veterans. (330 ILCS 45/9 (West 1992).) This is not the first conflict between a county board and VAC over the meaning and interpretation of the Act. (See *Ickes v. Board of Supervisors* (1953), 415 Ill. 557, 114 N.E.2d 669; *Makowicz v. County*

*of Macon* (1980), 78 Ill. 2d 308, 399 N.E.2d 1302; *Hazen v. County of Peoria* (1985), 138 Ill. App. 3d 836, 485 N.E.2d 1325.) Here, the board seeks to reduce benefits to veterans in need. If we were to adopt defendants' assertion that section 9 gives the board supremacy over the VAC, we would be granting the board the power to thwart the very purpose of the Act. This we cannot do.

■ Whether determining the amount of veterans' benefits or the compensation of VAC personnel, the procedure to be followed is the same.[2] Initially the VAC makes a recommendation of an amount that it believes to be appropriate under the law. The county board then acts upon that recommendation, either to approve or disapprove the recommendation. (*Gustafson*, 319 Ill. App. 255, 49 N.E.2d 311.) If the board approves the VAC's recommendation, the matter is resolved. If the board disapproves the recommendation, the VAC then has two options: it may submit a new recommendation for a different amount or the superintendent may seek judicial relief for *mandamus*. After listening to the views of the parties, the circuit court may issue a writ of *mandamus* for either the amount sought by the VAC or a different amount. *People ex rel. City of Chicago v. Board of Review* (1927), 326 Ill. 124, 141, 157 N.E. 186 ("Under a petition for writ of *mandamus* the court is not bound to grant it for all the relief asked but may grant the relief so far as relators show a right to it").

In this case, we express *no* opinion as to whether the VAC's recommendations are proper, nor do we determine what sums would be "just and necessary" under the statute.

We reverse that portion of the circuit court's judgment concerning the authority of the VAC and board.

(The discussion of the remaining issues is not to be published pursuant to Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994).)

## CONCLUSION

The judgment of the circuit court of Will County is affirmed in part, and reversed in part.

Affirmed in part; reversed in part.

HOLDRIDGE and McCUSKEY, JJ., concur.

---

[2]Section 2 of the Act explicitly discusses relief by *mandamus*, while section 10 does not; nonetheless, as discussed above, terms and language found within both sections indicate a mandatory requirement that the board provide the necessary threshold sums for veterans' benefits and VAC salaries. 330 ILCS 45/2, 10 (West 1992).