NOTICE
Decision filed 08/05/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 150401

NO. 5-15-0401

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| BRADLEY A. LAVITE, Superintendent of the Veterans Assistance Commission of Madison County, Illinois, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15-MR-145 |
| ALAN J. DUNSTAN, Chairman of the Madison County Board; JOSEPH D. PARENTE, County Administrator of Madison County, Illinois; THE MADISON COUNTY BOARD; and JOHN D. LAKIN, Sheriff of Madison County, Illinois, | ) ) ) ) ) ) ) | |
| | ) | Honorable |
| Defendants-Appellees. | ) ) | Stephen A. Stobbs, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Chapman and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal is brought by Bradley A. Lavite, in his capacity as superintendent of the Veterans Assistance Commission of Madison County, Illinois, from an order dismissing his three-count complaint with prejudice.  Lavite filed an action against the named defendants for a writ of *mandamus*, claiming, in count I, that the defendants had no authority to keep him from entering his office located in the Madison County

1

Administration building. In count II, Lavite requested that the Madison County Board issue checks for his salary as superintendent of the Veterans Assistance Commission of Madison County, Illinois. Count III sought payment of the attorney fee invoices submitted for Lavite's legal representation.

¶ 2                                    FACTS

¶ 3     This litigation arises under various provisions of the Military Veterans Assistance Act (Act) (330 ILCS 45/0.01 *et seq.* (West 2014)). The purpose of this Act is to provide monetary assistance to honorably discharged military veterans, their families, and the families of deceased veterans. 330 ILCS 45/2 (West 2014). The Act requires, whenever practicable, that all efforts be made to allow military veterans with families and the families of deceased veterans to be provided for and assisted at their homes. 330 ILCS 45/6 (West 2014). In the event that the veteran does not have a home or family, the Act allows for alternative assistance in order to aid the veteran in need.

¶ 4     In order to administer the assistance as mandated, the Act authorizes the organization of a central assistance committee in counties where there are more than two posts, camps, chapters, or detachments of military veterans. This committee is known as the Veterans Assistance Commission (VAC) for the county involved. 330 ILCS 45/2 (West 2014). It is undisputed that Madison County has two or more posts, camps, chapters, or detachments of military organizations chartered by the Congress of the United States. Thus, in accordance with the Act, a VAC had been formed for Madison County, formally referred to as the Veterans Assistance Committee of Madison County, Illinois (Madison VAC). The Madison VAC is composed of one delegate and one

2

alternate from each of the posts, camps, units, and chapters located in Madison County (County).

¶ 5    The Act also designates an individual, referred to as the superintendent, to act on behalf of the VAC.  Pursuant to section 10 of the Act, "[t]he executive powers of the commission shall be vested in a superintendent elected by the commission from among those who served in the armed forces of the United States."  330 ILCS 45/10 (West 2014).  The VAC's superintendent and employees are not considered employees of the county, and they are exempt from the provisions of civil service acts and laws of the state.  330 ILCS 45/10 (West 2014).

¶ 6    Under the circumstances herein, the Madison County Board (Board) is the unit of government responsible for providing such sums of money as may be "just and necessary" to carry out the mandate of the Act.  330 ILCS 45/2 (West 2014).  The process is fairly simple.  The Madison VAC submits a proposed budget setting forth the amount of money it deems "just and necessary," and the Board makes the final decision as to the funds to be expended.  *Makowicz v. County of Macon*, 78 Ill. 2d 308, 399 N.E.2d 1302 (1980).  Where the county board fails to appropriate the "just and necessary" amounts required for the veteran benefits, the Act allows the superintendent to seek a writ of *mandamus* against the county board for the appropriation of the necessary funding.  330 ILCS 45/2 (West 2014).  Once appropriated, the decision regarding how the monies are spent to implement the support for eligible veterans is made based upon the recommendations of an assistance committee within the VAC, and the superintendent draws such funds.  330 ILCS 45/2 (West 2014).

¶ 7    The Act further provides that in addition to those sums appropriated for the aid to veterans, the VAC shall recommend to the county board the necessary amounts of additional monies needed to properly compensate the VAC officers and employees required to administer the assistance.  330 ILCS 45/10 (West 2014).  Here, there is no dispute that the Madison VAC submitted a proposed budget to the Board and that the Board had approved monies to fund both the assistance for veterans and the employee compensation.    Specifically,  by  ordinance  No. 2014-07,  the  Board  approved  and allocated  the  sum  of  $505,035  to  the  Madison  VAC  for  the  fiscal  year  2015.    This appropriation incorporated monies for services and supplies, as well as for funding for the employee payroll, which included Lavite's salary as superintendent.

¶ 8    The Act also requires that the Board provide the Madison VAC with an office and all necessary supplies.  330 ILCS 45/10 (West 2014).  With regard, specifically, to the VAC office, the Act sets forth this obligation as follows:

"The  superintendent,  designated  Superintendent  of  Veterans  Assistance  of  the county, shall, under the direction of the commission, have charge of and maintain an office in the county building or other central location, to be used solely by the commission  for  carrying  on  its  assistance  work.    The  county  shall  provide  the office and furnish all necessary supplies, including telephone, printing, stationery and postage therefor."  330 ILCS 45/10 (West 2014).

There is no dispute that as of March 12, 2015, the plaintiff, Bradley A. Lavite, had been serving as the duly elected superintendent of the Madison VAC.  It is also undisputed that

4

as of that date, the Board had designated an office for the Madison VAC in the Madison County Administration building.

¶ 9 On June 12, 2015, Lavite filed a verified, three-count complaint in *mandamus*. He filed the cause of action in his capacity as the superintendent of the Madison VAC. He did not include the Madison VAC as a named plaintiff or a nominal party to the proceeding. Lavite named as defendants Alan J. Dunstan, chairman of the Madison County Board; Joseph D. Parente, county administrator of Madison County; the Madison County Board; and John D. Lakin, sheriff of Madison County.

¶ 10 In count I of his complaint, Lavite sought a writ ordering the defendants to allow him access to the Madison VAC office located in the administration building. In particular, Lavite alleged that on March 12, 2015, he experienced a medical emergency requiring his hospitalization at the St. Louis Veteran's Administration Hospital in Jefferson Barracks, Missouri. He was admitted under the medical care of Dr. Jane Loitman, a psychiatrist with whom he had been treating for some period of time. Several days later, on March 18, 2015, Dr. Loitman issued a letter indicating that Lavite could return to work on March 23, 2015, without restrictions. A copy of Dr. Loitman's letter was attached to the plaintiff's complaint as exhibit B.

¶ 11 On March 20, 2015, defendant Joseph D. Parente, in his official capacity as the county administrator for Madison County, issued a letter directed to Bradley A. Lavite at his home address. That letter indicated, "Per our telephone conversation this morning, please be advised that until further notice, you are not permitted to enter the Madison County Administration Building." A copy of the Parente letter was attached to Lavite's

complaint as exhibit A. No details were provided regarding the content of the telephone conversation referred to in the letter, and no reasons were given for the decision to deny Lavite access to the administration building. Nevertheless, denying Lavite entry to the building meant that Lavite could not access the Madison VAC office located therein. Therefore, as the Madison VAC superintendent, Lavite asked the court to order the defendants to provide him access to his office, located in the administration building.

¶ 12    In count II, Lavite sought payment of his superintendent's salary, alleging that the defendants had advised they would not process the payroll requests for his salary. In count III, Lavite alleged that the Madison VAC had authorized the hiring of an attorney to represent Lavite and that the Board had refused payment of the attorney fee invoices. The Madison VAC resolution to hire an attorney for Lavite, dated April 10, 2015, was attached to Lavite's complaint as exhibit E. Therefore, Lavite sought a writ requiring the Board to pay the attorney fee bill from the Madison VAC funds.

¶ 13    Counsel for the defendants filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2014)). With regard to count I, the defendants generally claimed that the plaintiff's complaint failed to state a cause of action for *mandamus* and that *mandamus* was not available as a remedy for the plaintiff. The defendants alleged that Parente's decision to deny Lavite the right of entry to the administration building was done pursuant to Parente's duty to ensure the safety of the public. Therefore, the defendants claimed that the action taken was a discretionary act, made in Parente's role as the Madison County

6

administrator. Inasmuch as the action was discretionary, the defendants averred that *mandamus* was inappropriate.

¶ 14 With regard to count II, the defendants argued that payment of Lavite's salary was determined by the Madison VAC, not the Board. Attached to the defendants' motion to dismiss was an affidavit, executed by Parente, which indicated, "The County has not and will not fail or refuse to pay Plaintiff's salary so long as the Veteran's Assistance Commission has sufficient funds to pay the Superintendent's salary and forwards a proper payroll request to the County." In light of the fact that the defendants conceded that Lavite would continue to receive his salary, the defendants claimed count II was moot, and should be dismissed.

¶ 15 Finally, as to count III, the defendants first claimed that Lavite did not have standing to raise the issue regarding payment of attorney fees, as that claim belonged solely to the Madison VAC, which had not been named as a party to the action. The defendants admitted, however, that the Madison VAC could pay its attorney fees "under proper circumstances." Citing section 9 of the Act (330 ILCS 45/9 (West 2014)), the defendants argued that chapter 34.02 of the Madison County Board Ordinances required that the County Finance and Government Operations Committee be responsible for approving "purchases greater than $5,000.00 and up to $30,000.00." Further, the defendants claimed that the Madison VAC was subject to the County's competitive purchasing ordinance. Therefore, because the Madison VAC had not complied with the requisite County ordinances, neither Lavite nor the Madison VAC was entitled to the relief requested.

¶ 16   On August 25, 2015, Lavite filed a memorandum in opposition to the defendants' motion to dismiss.   The first paragraph of that memorandum pointed out that the defendants' motion failed to comply with section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2014)).   The remainder of Lavite's memorandum defended each count of his complaint in *mandamus*.

¶ 17   On August 26, 2015, the court held a hearing on the defendants' motion to dismiss. At the conclusion of the hearing, the court took the matter under advisement.   On September 1, 2015, the trial court issued an order that dismissed all three counts of Lavite's complaint with prejudice.  This timely appeal followed.

¶ 18                                  ANALYSIS

¶ 19   On appeal, Lavite asserts that the court erred in dismissing his complaint with prejudice.  Before we address the merits of this appeal, we would be remiss if we did not point out the manifest disregard by the defendants for the statutory requirements set forth in section 2-619.1 of the Code.  As noted previously, the defendants simply asked the court to dismiss the plaintiff's complaint pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2014)).  The defendants' motion to dismiss was inadequate because it failed to comply with the procedural requirements for combined motions.  *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 20, 988 N.E.2d 984.  This is not an isolated occurrence.  The failure to follow the procedural requirements of section 2-619.1 seems to be increasingly prevalent among members of the trial bar, as this court continues to see these improperly filed motions to dismiss.  This

8

case is yet another example, and it is because of this lack of compliance with section 2-619.1 that we address this issue.

¶ 20    Section 2-619.1 of the Code is the procedural mechanism that allows for combined motions pursuant to section 2-615, section 2-619, and section 2-1005.  735 ILCS 5/2-619.1 (West 2014); see *Reynolds*, 2013 IL App (4th) 120139, ¶ 20, 988 N.E.2d 984.  A combined motion under section 2-619.1, however, must be separated into parts, and each part must be limited to and specify the specific section upon which the litigant is seeking relief.  Further, each part must "clearly show the points or grounds relied upon under the [s]ection upon which it is based."  735 ILCS 5/2-619.1 (West 2014).  Section 2-619.1 does not authorize the commingling of distinctive claims pursuant to section 2-615, 2-619, or 2-1005.  These sections are procedurally distinct from one another, and parties are not at liberty to ignore these distinctions when filing a combined motion pursuant to section 2-619.1.  *Reynolds*, 2013 IL App (4th) 120139, ¶ 20, 988 N.E.2d 984.  The failure to divide the motion into specific parts and to outline the specific grounds supporting each part is an undisciplined motion practice that violates the explicit requirements of section 2-619.1 and makes the task of considering the merits of the motion more arduous for both trial courts and courts of review.

¶ 21    Counsel who fail to comply with the procedural rules regarding combined motions do so at their own peril.  Trial courts should not consider a combined motion under section 2-619.1 if it does not adhere to these statutory requirements.  *Reynolds*, 2013 IL App (4th) 120139, ¶ 21, 988 N.E.2d 984.  This is because such motions create unnecessary complications and confusion.  Thus, when faced with a motion that does not

comport with section 2-619.1, trial courts should *sua sponte* deny the motion and provide the moving party with an opportunity to file a motion that meets the statutory requirements. *Reynolds*, 2013 IL App (4th) 120139, ¶ 21, 988 N.E.2d 984. Alternatively, trial courts could allow the moving party to file separate motions under section 2-615 and section 2-619 to avoid running afoul of the procedural requirements of section 2-619.1. *Reynolds*, 2013 IL App (4th) 120139, ¶ 21, 988 N.E.2d 984.

¶ 22 In this case, the plaintiff recognized that the defendants had filed a combined motion to dismiss that was not in compliance with section 2-619.1 but did not ask that the pleading be stricken. Instead, the parties proceeded to argue the merits of the motion, with the defendants offering their more detailed explanations during their oral argument before the trial court. During the hearing on August 26, 2015, the defendants claimed that count I of the plaintiff's complaint should be dismissed pursuant to section 2-615 and counts II and III of the complaint should be dismissed pursuant to section 2-619. Thereafter, on September 1, 2015, the trial court dismissed the plaintiff's complaint without addressing any particular section of the Code.

¶ 23 As a result of this ruling, our task has been greatly complicated by the circuit court's failure to articulate the specific sections relied upon in its dismissal of the plaintiff's complaint. Notions of fundamental fairness are better served by following the law and our applicable rules. There is no doubt that the lack of clarity in the trial court's ruling resulted because of the defendants' failure to follow the procedural requirements of section 2-619.1. Nevertheless, we begin with the trial court's order of September 1, 2015, and address each of its rulings in turn.

¶ 24    With regard to count I of the plaintiff's complaint, the trial court found that Lavite had failed to name a necessary party, namely the Madison VAC. Count I requested that the court issue a writ requiring the defendants to allow Lavite access to the Madison VAC office located in the administration building. With regard to necessary parties, "Illinois law does not have any one express provision regulating who must be joined as a party. Instead, several provisions of the Code of Civil Procedure affect the common-law rule relating to the joinder of parties." *Safeco Insurance Co. of Illinois v. Treinis*, 238 Ill. App. 3d 541, 544, 606 N.E.2d 379, 380 (1992). Our courts have analyzed whether a party is "necessary" by looking at the various reasons alleged for joinder. Consequently, the courts have arrived at three reasons to conclude a party is "necessary," such that the lawsuit should not proceed in the party's absence: "(1) to protect an interest that the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence; (2) to protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy." *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 970, 693 N.E.2d 446, 452 (1998).

¶ 25    As noted previously, section 10 of the Act vests the executive powers of the commission in the superintendent elected by the commission. That superintendent "shall, under the direction of the commission, have charge of and maintain an office in the county building or other central location, to be used solely by the commission for carrying on its assistance work." 330 ILCS 45/10 (West 2014). Therefore, as the superintendent for the Madison VAC, Lavite was vested with executive authority by

11

statute and was obligated to protect the interests of the Madison VAC. As such, there was no need, under any of the reasons identified herein, to deem the Madison VAC a necessary party. Moreover, Lavite was the authorized spokesperson for the Madison VAC, and there was no other individual authorized to speak on its behalf. Therefore, we hold that the Madison VAC was not a necessary party under count I of Lavite's complaint, and the court erred in dismissing count I for that reason.

¶ 26 Even if the Madison VAC were considered a necessary party to enable the court to make a complete determination of the controversy, the Code has several options available, short of dismissal. More particularly, section 2-406(a) of the Code provides that "[i]f a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in." 735 ILCS 5/2-406(a) (West 2014). Section 2-407 specifically indicates that "[n]o action shall be dismissed for misjoinder of parties, or dismissed for nonjoinder of necessary parties without first affording reasonable opportunity to add them as parties." 735 ILCS 5/2-407 (West 2014). Additionally, had the defendants truly believed that the Madison VAC was a necessary party, they could have added the Madison VAC under section 2-405 of the Code (735 ILCS 5/2-405 (West 2014)). Thus, even if the Madison VAC were a necessary party, the court should have granted Lavite the opportunity to amend his complaint. Accordingly, we find that the court erred in its dismissal of count I, with prejudice, when it failed to allow Lavite to amend his pleading.

¶ 27 The second basis given by the trial court for dismissal of count I was in two parts. First, the court held that Lavite had no standing to seek a writ of *mandamus*. Second, the

12

court determined that the actions taken by the defendants were discretionary judgments, relying upon *Hazen v. County of Peoria*, 138 Ill. App. 3d 836, 485 N.E.2d 1325 (1985).

¶ 28 We first examine the issue of standing. Under section 2-619(a)(2), a defendant may move for an involuntary dismissal where the plaintiff does not have legal capacity to sue, or the defendant does not have the legal capacity to be sued. 735 ILCS 5/2-619(a)(2) (West 2014). The doctrine of standing ensures that issues are raised only by those parties who have a sufficient stake in the outcome of the controversy. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221, 720 N.E.2d 1034, 1039 (1999). In ruling on the motion, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383, 808 N.E.2d 957, 962 (2004). A section 2-619 motion to dismiss presents a question of law, and our review is *de novo*. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 411, 775 N.E.2d 951, 957 (2002).

¶ 29 In this case, the trial court's dismissal based on standing highlights the conundrum caused by the defendants' failure to comply with the statutory requirements for filing combined motions to dismiss. During the August 26 hearing, counsel for the defendants argued that section 2-615 applied to count I. Standing, however, is an issue raised pursuant to section 2-619. Regardless of the defendants' failure to recognize this important distinction, we reiterate that the Act provides that "[t]he executive powers of the commission shall be vested in a superintendent," and it is the superintendent who is authorized to bring an action for *mandamus* where a county board fails to appropriate the just and necessary sums needed to provide veteran assistance under the Act. 330 ILCS

13

45/10, 2 (West 2014). We recognize that the action before us does not involve the appropriation of funds, but there seems to be no distinction in the Act as to the ability of the superintendent to enforce the multitude of rights available to the Madison VAC under the Act.

¶ 30 In *Ickes v. Board of Supervisors*, the superintendent of the county veterans commission and two tax payers filed an action for *mandamus* against the county board, claiming the county had not appropriated the just and necessary sums to fund the benefits needed to assist veterans pursuant to the Act. *Ickes v. Board of Supervisors*, 415 Ill. 557, 114 N.E.2d 669 (1953). In *Makowicz v. County of Macon*, the superintendent of the county veterans commission brought a complaint for declaratory judgment on behalf of the county VAC claiming that the authority to appoint and discharge employees of the commission was not held by the county board. *Makowicz v. County of Macon*, 78 Ill. 2d 308, 399 N.E.2d 1302 (1980). In each of these cases, the commission was not a named plaintiff, and our supreme court proceeded to determine the merits of the appeal. Therefore, we hold that Lavite had standing to bring his complaint pursuant to the Act, and count I should not have been involuntarily dismissed under section 2-619(a)(2).

¶ 31 Next, the trial court determined that count I sought a writ of *mandamus* "against the defendants, public officials, who made discretionary judgments regarding the security of County facilities, employees and members of the public using same." Once again, it is difficult for us to discern whether the court dismissed Lavite's complaint because the plaintiff failed to state a cause of action upon which relief could be granted–thus involving section 2-615 of the Code–or whether the dismissal was based on an

14

affirmative matter under section 2-619(a)(9)–namely, the fact that Parente was performing a discretionary act, thereby precluding an action for *mandamus*.

¶ 32    We begin our analysis with *mandamus*, generally.  *Mandamus* is an extraordinary remedy to enforce, as a matter of public right, "the performance of official duties by a public officer where no exercise of discretion on his part is involved."  *Madden v. Cronson*, 114 Ill. 2d 504, 514, 501 N.E.2d 1267, 1272 (1986).   "The writ provides affirmative rather than prohibitory relief [citation] and can be used to compel the undoing of an act [citation]."  *Noyola v. Board of Education*, 179 Ill. 2d 121, 133, 688 N.E.2d 81, 86 (1997).   *Mandamus* will lie where, as alleged here, public officials have failed or refused to comply with requirements imposed by statute, provided that the requirements for that writ have been satisfied.  *Noyola*, 179 Ill. 2d at 132, 688 N.E.2d at 86.

¶ 33    Article 14 of the Code governs the procedures related to the filing of an action in *mandamus*.  735 ILCS 5/14-101 *et seq*. (West 2014).  Pursuant to section 14-101, an action for *mandamus* shall be brought in the name of the person seeking the relief.  735 ILCS 5/14-101 (West 2014).   More importantly, the Code provides that "[t]he proceedings for mandamus shall not be dismissed nor the relief denied because the plaintiff may have another judicial remedy, even where such other remedy will afford proper and sufficient relief; and amendments may be allowed as in other civil cases." 735 ILCS 5/14-108 (West 2014).  Even where the plaintiff seeks the wrong remedy but demonstrates an entitlement to relief, section 14-109 requires the court to allow the plaintiff the opportunity to amend his pleadings.  735 ILCS 5/14-109 (West 2014).  With regard to civil cases, generally, section 2-616(a) of the Code allows for amendments to

15

the pleadings. 735 ILCS 5/2-616(a) (West 2014). Specifically, "[a]t any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses." 735 ILCS 5/2-616(a) (West 2014). The purpose of allowing an amendment is to "enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2-616(a) (West 2014). Therefore, even if the trial court had determined that count I was insufficient in seeking a remedy at law, the court erred in its dismissal of count I, with prejudice, when it failed to allow Lavite to amend his pleading.

¶ 34 Despite the extraordinary remedy allowed by such a writ, *mandamus* proceedings are governed by the same pleading rules that apply to actions at law. *Noyola*, 179 Ill. 2d at 133, 688 N.E.2d at 86. For a complaint seeking *mandamus* to withstand a challenge to its legal sufficiency, it must allege facts that establish a clear right to the relief requested, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ. *Noyola*, 179 Ill. 2d at 133, 688 N.E.2d at 86. The defendants' motion to dismiss merely concluded, as to count I, that "Plaintiff's Complaint does not state a cause of action for mandamus." At oral argument, the defendants insisted that count I be dismissed pursuant to section 2-615. Indeed, section 2-615 allows for the dismissal of a complaint where it is "substantially insufficient in law." 735 ILCS 5/2-615 (West 2014). "In ruling on such a motion, a court must accept as true all well-pleaded facts in the complaint, as well as any reasonable inferences that may arise from them." *Kanerva v.*

16

*Weems*, 2014 IL 115811, ¶ 33, 13 N.E.3d 1228. "The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Weems*, 2014 IL 115811, ¶ 33, 13 N.E.3d 1228. "A cause of action should not be dismissed under section 2-615 unless it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Weems*, 2014 IL 115811, ¶ 33, 13 N.E.3d 1228. "Our review of an order granting a section 2-615 motion to dismiss is *de novo* \*\*\*." *Weems*, 2014 IL 115811, ¶ 33, 13 N.E.3d 1228.

¶ 35    Therefore, we first consider whether the facts set forth in Lavite's complaint are sufficient to establish a cause of action at law. The plaintiff alleged that he suffered a medical emergency that required his hospitalization. He also alleged that Parente is the county administrator of Madison County, Illinois. In his complaint, Lavite set forth the obligation of the County to provide the Madison VAC with an office under section 10 of the Act (330 ILCS 45/10 (West 2014)). Pursuant to section 10, the superintendent is in charge of that office, which is to be used solely by the commission for carrying on its work assisting veterans. Plaintiff further alleged that on March 20, 2015, Parente "issued a directive to Bradley A. Lavite that he was not permitted to enter the Madison County Administration Building." A copy of Parente's letter was attached as exhibit A. Lavite requested that the court compel the defendants to allow him access to the Madison VAC office, located in the administration building. Without being allowed to access the Madison VAC office, Lavite claimed he was unable to carry on his duties as the VAC superintendent.

¶ 36 The defendants did not answer the complaint, opting instead to file a motion to dismiss. Nevertheless, during oral argument, there was a great deal of discussion regarding the reasoning used by Parente in denying Lavite access to the administration building. The defendants excused Parente's conduct based upon his obligation to protect the public. The plaintiff's complaint, however, said nothing about potential harm to the public. In fact, the pleading is devoid of any mention that Parente's actions were taken for the "security of County facilities," as indicated by the court's order. The allegations in the pleadings are the only matters that the court is to consider in ruling on a section 2-615 motion. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485, 639 N.E.2d 1282, 1289 (1994). The trial court obviously considered facts outside of the plaintiff's pleading, which was improper under a section 2-615 motion to dismiss. Therefore, having reviewed the allegations of Lavite's complaint in the light most favorable to plaintiff, we believe the court erred in dismissing count I under section 2-615, where it considered factual matters outside of the pleadings.

¶ 37 We next consider whether the trial court properly dismissed count I of Lavite's complaint pursuant to section 2-619 (735 ILCS 5/2-619 (West 2014)). As noted previously, a motion to dismiss under section 2-615 differs significantly from a motion for involuntary dismissal under section 2-619. *Becker v. Zellner*, 292 Ill. App. 3d 116, 122, 684 N.E.2d 1378, 1383 (1997). "A significant difference between the two motions is that a section 2-615 motion is based on the pleadings rather than on the underlying facts." *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29, 801 N.E.2d 1103, 1109 (2003). A section 2-619 motion, however, admits the legal sufficiency of the complaint but asserts

18

an affirmative defense or other matter that avoids or defeats the claim. *Becker*, 292 Ill. App. 3d at 122, 684 N.E.2d at 1383. In other words, the motion assumes that a cause of action has been stated but then "raises defects, defenses or other affirmative matter which appears on the face of the complaint or is established by external submissions which act to defeat the plaintiff's claim." *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584, 736 N.E.2d 1174, 1178 (2000). A section 2-619 proceeding enables the court to dismiss the complaint after considering issues of law or easily proved issues of fact. *Neppl*, 316 Ill. App. 3d at 585, 736 N.E.2d at 1179. In a hearing on a section 2-619 motion, the court may go outside of the pleadings, as the parties are allowed to introduce proof denying the facts alleged in the plaintiff's complaint, including affidavits and other forms of competent evidence. 735 ILCS 5/2-619 (West 2014).

¶ 38 In ruling that the actions of the defendants were discretionary, the court cited to *Hazen v. County of Peoria*, 138 Ill. App. 3d 836, 485 N.E.2d 1325 (1985). In *Hazen*, the Veterans Assistance Commission of Peoria County (Peoria VAC) and its supervisor filed a petition for *mandamus* and injunctions to compel the Peoria County Board to impose a tax rate that would raise the funds requested by the Peoria VAC to carry out the purposes of the Act. The Peoria County Board's authorization of a lower tax rate meant the Peoria VAC was still eligible to qualify for State funds that would supplement the local funds for public aid purposes. The county board directed the Peoria VAC to comply with the rules and regulations of the Department of Public Aid so that the remainder of the funds needed by the Peoria VAC could be obtained from the State. *Hazen*, 138 Ill. App. 3d at 838-39, 485 N.E.2d at 1327-28. The defendants counterclaimed for a declaratory

19

judgment and for an injunction or a writ of *mandamus* to require the plaintiffs to comply with the Public Aid Code (Ill. Rev. Stat. 1983, ch. 23, ¶ 12-21.13). In *Hazen*, the facts were not in dispute. The issue was whether the Peoria County Board's conduct constituted a discretionary act, thereby precluding an action for *mandamus*, as it is a well-settled rule of law that *mandamus* will not lie to compel the performance of an official duty in a particular manner where the exercise of judgment or discretion is involved. *Hazen*, 138 Ill. App. 3d at 839, 485 N.E.2d at 1328. After a hearing involving the merits of the case, the court granted the defendants' petition for *mandamus* and for an injunction. There was no discussion regarding "necessary parties" or "standing." Rather, *Hazen* is a case where the court decided the issues raised by the pleadings and the evidence and entered judgment.

¶ 39 The procedural posture in *Hazen* is far different than the status of the pleadings before the trial court in this case. In the case *sub judice*, the defendants did not file responsive pleadings. Instead, the defendants filed a motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief could be granted. The defendants attached to their motion an affidavit from Parente, which said nothing about the need to act to protect the public safety. Instead, during argument on their motion, the defendants offered only their argument that the action taken by Parente was a discretionary act. Not a scintilla of credible evidence was proffered before the trial court in the form required by the Code. Indeed, Parente may have had a reason to keep Lavite from entering the administration building, but this was clearly a question of fact not properly raised by the defendants' motion. There is nothing in the record to indicate that Parente's unilateral

20

denial of Lavite's access to the administration building or the Madison VAC office was performed for any reason other than that alleged by plaintiff in his complaint. At this stage of the proceedings, the trial court erred in its determination that the defendants made discretionary judgments regarding the security of county facilities.

¶ 40    Having fully considered the potential bases for the dismissal of count I pursuant to sections 6-215 and 2-619, we vacate the trial court's order in its entirety and remand to the trial court with instructions to deny the defendants' motion to dismiss.

¶ 41    We next address the court's order dismissing count II. In count II, Lavite alleged that the defendants advised that they would not process payroll requests for the superintendent's salary. Lavite sought an order of *mandamus*, directing the defendants to process the Madison VAC's payroll requests covering his salary as the superintendent. Section 10 of the Act directs the county board to appropriate such sums, upon recommendation of the VAC and as approved by the county board, to properly compensate the officers and employees who are required to administer the assistance provided for in the Act. 330 ILCS 45/10 (West 2014). In the motion to dismiss count II, the defendants conceded that payment of Lavite's salary was the function of the Madison VAC, not the County. They attached an affidavit, executed by Parente, which stated in pertinent part:

"In Count II of Plaintiff's Complaint Plaintiff states that Defendants have advised that they will not process payroll requests for the Superintendent's salary. This allegation is false. The County has not and will not fail or refuse to process a payroll request from the Veterans Assistance Commission to the County to pay

21

Plaintiff's salary so long as the Veterans Assistance Commission has sufficient funds to pay the Superintendent's salary and forwards a proper payroll request to the County. The County pays Plaintiff's salary out of the Veterans Assistance Commission funds appropriated by the Madison County Board."

¶ 42   According to the affidavit, the defendants have affirmatively stated that they have not, and will not, refuse to process a payroll request. Thus, there appears to be no actual controversy between the parties at this time as to count II. After reviewing the record, we find that count II was brought prematurely, as it does not present a concrete dispute requiring a judicial decision. We affirm the trial court's decision to dismiss count II. Nothing, however, would preclude Lavite from pursuing a remedy should an actual controversy arise with regard to his compensation.

¶ 43   Finally, we direct our attention to count III, wherein the plaintiff sought payment of attorney fees from the Madison VAC funds. The trial court identified several reasons for its dismissal of this count with prejudice. First, as with count I, the trial court held that the Madison VAC was a necessary party. In addition to the reasoning previously set forth herein, it is noteworthy that attached to the plaintiff's complaint, as exhibit E, was a "Resolution To Hire Attorney," dated April 10, 2015. This resolution authorized the hiring of an attorney to represent Lavite and indicated as follows:

"NOW THEREFORE BE IT RESOLVED, that the President is authorized to execute the attached retainer agreement with attorney Thomas W. Burkart Law Office to represent the interests of the Commission and its Superintendent in all

22

matters addressed in letters from Joseph Parente dated March 6 and April 6, 2015 and the complaint that accompanied the latter."

Defendants' argument that Lavite lacked standing was nonsensical, as they claimed the plaintiff "did not have a real interest in the funding of the VAC." That was not the issue. As the executive officer, Lavite had the authority to represent the Madison VAC in its efforts to have the attorney fees paid from Madison VAC funds. Therefore, we hold that the Madison VAC was not a necessary party to the proceeding, as Lavite could adequately protect the interests of the Madison VAC. Moreover, as before, even if the Madison VAC was deemed a necessary party by the court or the defendants, the cause of action should not have been dismissed, as the complaint could have been amended to add the Madison VAC as a party-plaintiff or nominal defendant.

¶ 44 The court also dismissed count III, holding that the plaintiff had no standing to seek *mandamus* under the Act for payment of attorney fees "where the VAC must first submit the reimbursement request to the County for its review and approval." In reaching its decision, the circuit court relied upon *Veterans Assistance Comm'n v. County Board*, 2015 IL App (3d) 130969. In light of our prior discussion regarding the issue of standing and the aforementioned resolution attached to Lavite's complaint, we find that Lavite has standing to bring this claim on behalf of the Madison VAC for payment of attorney fees.

¶ 45 Finally, we consider whether the Madison VAC was entitled to have its attorney fees paid from the VAC funds that had already been appropriated, or whether the VAC was subject to the County ordinances applicable to the expenditure of monies in excess of $5000 and/or the competitive purchasing ordinance. The defendants, once again, alleged

23

an affirmative matter in their attempt to dismiss count III. Therefore, we review the court's dismissal pursuant to section 2-619(a)(9). 735 ILCS 5/2-619(a)(9) (West 2014).

¶ 46 In support of this argument, the defendants rely upon *Veterans Assistance Comm'n v. County Board*, 274 Ill. App. 3d 32, 654 N.E.2d 219 (1995). In that case, the VAC suggested benefit amounts for veterans at an amount different than those recommended by the county board. 274 Ill. App. 3d at 34, 654 N.E.2d at 220-21. Additionally, the VAC approved an annual superintendent salary of $46,000, but the board appropriated only $23,700. 274 Ill. App. 3d at 34, 654 N.E.2d at 221. The county executive also signed an order appointing the county auditor to oversee the distribution of money and supplies to veterans, and then the board adopted a resolution that purported to amend parts of the VAC's handbook that included the standards for determining need, veterans' benefit levels, and VAC rules. 274 Ill. App. 3d at 34, 654 N.E.2d at 221. The trial court ruled in favor of the county. 274 Ill. App. 3d at 34, 654 N.E.2d at 221. The appellate court reversed and remanded. In doing so, the court held that section 9 of the Act "does not empower the board to create rules that unilaterally alter veterans' benefit levels, VAC salary levels or VAC rules." 274 Ill. App. 3d at 36, 654 N.E.2d at 222. The court further explained, "Here, the board seeks to reduce benefits to veterans in need. If we were to adopt defendants' assertion that section 9 gives the board supremacy over the VAC, we would be granting the board the power to thwart the very purpose of the Act. This we cannot do." 274 Ill. App. 3d at 37, 654 N.E.2d at 222-23.

¶ 47 Similarly, in this case, the Board seeks to impose oversight on the Madison VAC by imposing its ordinances, which directly affect the operation of the commission. As in

24

*Veterans Assistance Comm'n v. County Board*, this it cannot do. Therefore, we vacate subparagraph b of the trial court's order relating to count III of Lavite's complaint, as the County had already appropriated the funds for the Madison VAC and had no further right to impose its ordinances on the Madison VAC in the selection of an attorney for Lavite.

¶ 48 Moreover, the defendants conceded that "Illinois law is clear that attorney's fees for legal representation of a County Veterans Assistance Commission must be paid from the Veterans Assistance Commission funds, not from the general fund of the County." Here, the plaintiff's complaint alleges that the Board had approved a budget for the Madison VAC, which included monies for the assistance to eligible veterans as well as salaries and expenses needed to implement the purposes of the Act. Therefore, defendants' reliance on *Hazen v. County of Peoria*, 138 Ill. App. 3d 836, 485 N.E.2d 1325 (1985), is misplaced.

¶ 49 In *Hazen*, the VAC requested that its attorney be paid from county funds. There, the court indicated that "the attorney for the VAC is not entitled to compensation from general county funds but rather must be paid from VAC funds. This holding is consistent with the decision of the Supreme Court of Illinois in *Makowicz v. County of Macon* (1980), 78 Ill. 2d 308, 399 N.E.2d 1302, that the superintendent and other VAC employees are employees of the VAC and not of the county board." *Hazen*, 138 Ill. App. 3d at 842, 485 N.E.2d at 1329-30.

¶ 50 Unlike the controversy in *Hazen*, the defendants concede their obligation to pay, so long as the VAC has the necessary funding, and have only objected based on the applicability of the ordinances. Therefore, we find there is no genuine issue of fact as to

25

the payment of attorney fees. Thus, the court erred in dismissing count III. Accordingly, we vacate that order and remand to the circuit court with instructions to deny the defendants' motion to dismiss count III.

¶ 51                                    CONCLUSION

¶ 52    In conclusion, as to count I, we vacate the trial court's order in its entirety and remand to the trial court with instructions to deny the defendants' motion to dismiss. As to count II, the circuit court's order of dismissal is affirmed, as the claim was premature. As to count III, we vacate the trial court's order and remand to the trial court with instructions to enter an order denying the defendants' motion to dismiss.


¶ 53    Affirmed in part; vacated in part; and remanded with instructions.

2016 IL App (5th) 150401

NO. 5-15-0401

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| BRADLEY A. LAVITE, Superintendent of the Veterans Assistance Commission of Madison County, Illinois, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15-MR-145 |
| ALAN J. DUNSTAN, Chairman of the Madison County Board; JOSEPH D. PARENTE, County Administrator of Madison County, Illinois; THE MADISON COUNTY BOARD; and JOHN D. LAKIN, Sheriff of Madison County, Illinois, | ) ) ) ) ) ) ) ) | Honorable |
| Defendants-Appellees. | ) ) | Stephen A. Stobbs, Judge, presiding. |

_____

**Opinion Filed:**      August 5, 2016
_____

**Justices:**      Honorable Judy L. Cates, J.

Honorable Melissa A. Chapman, J., and
Honorable Bruce D. Stewart, J.,
Concur

_____

**Attorney for Appellant**      Thomas W. Burkart, Burkart Law Offices, 130 West State Street, P.O. Box 447, Hamel, IL 62046

_____

**Attorneys for Appellees**      John L. Gilbert, Timothy C. Sansone, Sandberg, Phoenix & von Gontard, P.C., 600 Washington Avenue, 15th Floor, St. Louis, MO 63101 (attorneys for Alan J. Dunstan, Madison County Board, and Joseph D. Parente); Heidi L. Eckert, Lowenbaum Law, 222 South Central Avenue, Suite 900, Clayton, MO 63105 (attorney for John D. Lakin)

_____