**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190391-U

Order filed December 15, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| GREG DABBS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Peoria County, Illinois |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-19-0391 |
| PEORIA COUNTY, ILLINOIS, SCOTT | ) | Circuit No. 17-L-208 |
| SORRELL, MICHAEL BROOKS, PEORIA | ) | |
| COUNTY SHERIFF'S OFFICE, and JERRY | ) | |
| BRADY, Peoria County State's Attorney, | ) | Honorable |
| | ) | Jodi Melinda Hoos |
| Defendants-Appellees. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices McDade and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    Trial court did not err when it denied plaintiff's motions for default, for a rule to show cause, and for appointment of special counsel, and when it dismissed plaintiff's fourth amended complaint for failing to state a claim on which relief could be granted.

¶ 2    The trial court dismissed plaintiff Greg Dabbs's fourth amended complaint filed against

defendants Peoria County, Peoria County administrator Scott Sorrell, Peoria County Veteran's

Assistance Commission (VAC) director Michael Brooks, and Peoria County State's Attorney Jerry Brady, alleging numerous violations of Dabbs's constitutional rights. Dabbs appealed. We affirm.

¶ 3                                                    FACTS

¶ 4         Plaintiff Greg Dabbs filed his initial complaint in August 2017, presenting nine counts arising from the denial of his request for assistance with his heating bill from defendant Brooks, his inquiry into VAC's procedures and budget with defendant Sorrell, his subsequent arrest and detention by defendant Peoria County sheriff's department officers, and the delay and ultimate dismissal of the disorderly conduct charge against him by defendant Brady.

¶ 5         Dabbs moved to default the defendants (collectively Peoria County) for failing to timely appear. In response, Peoria County argued it was in settlement negotiations with Dabbs when he unexpectedly moved for default. The trial court granted the defendants a continuance over Dabbs's objection. Peoria County filed its appearance and moved to dismiss Dabbs's complaint. The trial court denied Dabbs's motion for default and granted Peoria County's motion to dismiss. Dabbs filed an amended complaint on January 17, 2018, which the trial court dismissed on Peoria County's motion.

¶ 6         Dabbs sought the appointment of a special prosecutor and filed a second amended complaint on May 2, 2018. Peoria County moved to dismiss the complaint and the trial court granted the motion. It also denied Dabbs's motion for the appointment of special counsel. Dabbs filed a third amended complaint on August 29, 2018, adding Brady as a defendant and alleging abuse of process and malicious prosecution. Peoria County moved to dismiss, and the trial court granted the dismissal.

¶ 7         Dabbs filed a fourth amended complaint on January 7, 2019. The complaint alleged violations of his right to free speech under the United States Constitution and Illinois Constitution

2

(counts I, III); unreasonable search and seizure under the federal and state constitutions (counts II, IV); conspiracy to violate Dabbs's constitutional rights (count V), due process violations (count VI), eighth amendment violations (count VII) and false arrest (count VIII). Peoria County moved to dismiss, and Dabbs filed motions for default judgment and for a rule to show cause. The trial court dismissed Dabbs's complaint with prejudice and all other motions as moot. Dabbs timely appealed.

¶ 8                                                    ANALYSIS

¶ 9         Dabbs raises three issues on appeal. First, he challenges the trial court's denial of his motions for default judgments against the defendants. Second, Dabbs argues the trial court erred in granting Peoria County's motions to dismiss. Third, Dabbs complains that the trial court should have granted his motions for a special prosecutor and for a rule to show cause.

¶ 10        We begin with Dabbs's challenge to the trial court's denial of his motions for default. He asserts that Peoria County failed to timely file an appearance or answer and should have been defaulted.

¶ 11        A trial court may enter a default judgment for want of an appearance or for failure to plead. 735 ILCS 5/2-1301(d) (West 2018). A "default judgment is a drastic measure, not to be encouraged and to be employed with great caution, only as a last resort." *Biscan v. Village of Melrose Park Board of Fire & Police Commissioners*, 277 Ill. App. 3d 844, 848 (1996). It is preferred that controversies are decided on the parties' substantive rights. *Godfrey Healthcare & Rehabilitation Center, LLC. v. Toigo*, 2019 IL App (5th) 170473, ¶ 39. However, a default judgment is appropriate where a party flouts the court's authority or is deliberately indifferent to the court's commands. *Rockford Housing Authority v. Donahue*, 337 Ill. App. 3d 571, 574 (2003). This court

reviews a trial court's ruling on a motion for default for an abuse of discretion or a denial of substantial justice. *Jackson v. Bailey*, 384 Ill. App. 3d 546, 548 (2008).

¶ 12 Dabbs filed his complaint on August 3, 2017, and service was completed on the defendants on September 13, 2017. Peoria County failed to file an answer or an appearance before Dabbs filed a motion for default on October 17, 2017. He noticed the motion for a hearing on November 7, 2017. Peoria County appeared and filed a motion to dismiss the complaint and to continue the proceedings. As Dabbs argues, Peoria County's appearance was untimely as it was filed more than 30 days after the last summonses were served. See Ill. S. Ct. R. 181(a) (eff. Jan. 4, 2013). Peoria County informed the trial court that it postponed its response to Dabbs's complaint because it was trying to negotiate a settlement with him. The trial court apparently considered Peoria County's explanation presented a viable excuse for its untimely filing of an appearance. The record does not contain a report of proceedings so we do not know the court's specific reasoning for allowing Peoria County to untimely file its appearance. However, there is no evidence Peoria County intended to flout the court's authority or was intentionally indifferent to court rules. Rather, it appears Peoria County was in the midst of attempting to settle Dabbs's claims when he unexpectedly moved for a default. We find the record does not establish that the trial court abused its discretion or denied substantial justice in failing to grant Dabbs's motion for a default judgment.

¶ 13 We next consider whether the trial court erred when it dismissed Dabbs's fourth amended complaint with prejudice for failure to state a claim. He argues the VAC director was not a county employee, could not be represented by the county, and thus had not filed an answer or appearance.

¶ 14 A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint on the basis that the complaint fails to state a claim on which relief may be granted. 735 ILCS 5/2-615 (West 2018). When considering a section 2-615 motion, the court accepts as true all well-pleaded

4

facts in the complaint and all reasonable inferences that arise from those facts and interprets them in a light most favorable to the plaintiff. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 384 (2008). The critical inquiry is whether the complaint's allegations are sufficient to state a cause of action on which relief can be granted. *Board of Directors of Bloomfield Club Recreation Ass'n. v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). Illinois is a fact-pleading state and a plaintiff must allege facts and not mere conclusions in support of his claim. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). Mere conclusions of law or fact that are unsupported by specific factual allegations are insufficient to satisfy the fact-pleading requirements. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A complaint should be dismissed under section 2-615 only when no set of facts can be proven that would entitle a plaintiff to relief. *Id.* We review *de novo* the trial court's grant of a section 2-615 motion to dismiss. *Napleton*, 229 Ill. 2d at 305.

¶ 15       The fourth amended complaint presents claims for free speech violations, violations of Dabbs's right to be free from unreasonable searches and seizures, conspiracy, due process violations, cruel and unusual punishment and false arrest.

¶ 16       We begin with Dabbs's free speech claims. He asserts that he was denied his right to freedom of expression under the federal and state constitutions (counts I, III). The complaint alleges that Dabbs suffered retaliation for whistleblowing on VAC's supposed improprieties and the fear of retaliation chilled his freedom of expression. Dabbs does not provide specific facts as to what retaliation he faced or how his fears of future arrest were reasonable or likely to occur. The complaint merely states he "reasonably believed" he would be criminally charged and prosecuted and might be forced to leave the area because of the continuing threat of Peoria County's illegal

actions due to his questioning of the VAC funding. Because the allegations are conclusory and without factual support, we find these counts do not state a claim.

¶ 17     The next counts are those alleging Dabbs suffered unreasonable search and seizure and invasions of his privacy under the state and federal constitutions (counts II, IV). In his complaint, he alleges that his freedom from unreasonable searches, seizures and privacy invasions were violated but he does not say how, where, when or by whom. The relevant facts in the complaint state only that Dabbs was arrested at home by officers with a K9; the officers performed a pat down search; Dabbs was taken to the police station, required to empty his pockets, placed in an interrogation room and interviewed; and Dabbs was transported to the emergency room at a local hospital by the police and left there for an involuntary commitment, which he was told by a nurse was a common means by which the sheriff's department harassed people. Even if we take these facts as true and view them in a light most favorable to Dabbs, he does not explain how his rights were violated by an unreasonable search and seizure. His facts only present that he was arrested, interrogated, taken to the hospital and released. Other than his opinion that the arrest was unlawful, Dabbs does not submit any facts in the complaint to support his opinion.

¶ 18     As to his claims of privacy invasion, Dabbs complains that the VAC forms asked unnecessary and irrelevant private information. He alleges that the paperwork he was required to complete in order to receive assistance requested information that did not apply or was not authorized by law to be provided. Dabbs specifies as invasive questions inquiries regarding "red flagged" veterans, permanent denial of assistance, Internal Revenue Service reporting, car payments, spousal and children's birth certificates and social security numbers, and drug and alcohol convictions with documents of substance abuse treatment. According to Dabbs, none of this information is necessary to assist veterans with food, hygiene, utilities or shelter. He does not,

6

however, argue how the "irrelevant, restrictive and unnecessary" information prevents VAC from requiring it to enable it to determine if an applicant is qualified for assistance. The VAC director and county board chairperson have "general oversight" of the distribution of funds and supplies to veterans and their families, "subject to such rules, regulations, administrative procedures or audit reviews as are necessary as approved by the county board to carry out the spirit and intent of this Act." 330 ILCS 45/9(b) (West 2018). VAC requires the veteran applicant to complete various forms in order to determine whether he or she is qualified for assistance. Dabbs does not specify how VAC's paperwork requirements were either inapplicable or not authorized by law. We find these counts did not state a claim.

¶ 19 Dabbs next alleges the defendants' actions in violating his rights to freedom of expression and to be free from unreasonable searches and seizures constituted a conspiracy. He does not explain the conspiracy, who was a part of it, identify the common scheme or indicate steps taken in furtherance of the conspiracy. He does not allege the existence of an agreement among the defendants. He does not present any facts connecting any actions of any conspiracy to unlawfully harm or harassment. The facts in the complaint that could be connected to the conspiracy count establish that he met with Sorrell about Brooks and the alleged improprieties at VAC; Sorrell and Brooks filed a false police report against him and used the judicial process to retaliate against him and provide legal cover for all the defendants; the police took him to the emergency room after his release from custody as a means of harassment; the false police report and arrest required him to participate in court proceedings based on Sorrell's and Brooks's false statements; the defendants engaged in unlawful conduct and "acted jointly and in concert" with each other to participate in or acquiesce in others' unlawful conduct and did not intervene or stop others' unlawful conduct. Other possibly relevant statements included that after his release from custody, Dabbs remained

7

fearful of retaliation and a subsequent arrest and sentence to prison; and that the defendants personally engaged in conduct causing him physical pain, mental and emotional distress, loss of appetite, insomnia, anxiety, discomfort, damage to reputation, and deprivation of his constitutional rights. With these statements, Dabbs merely concludes, without factual support, that the defendants conspired against him. The allegations are insufficient to state a claim.

¶ 20     Dabbs further alleges his due process rights were violated, asserting "[d]ue process prohibits the use of detention as a means of punishing civil detainees." The only relevant facts in his complaint pertaining to this claim provide that he was shackled while interrogated, released, taken to the emergency room for an involuntary commitment, and again released. These actions were part of a criminal action and Dabbs was not a civil detainee. Dabbs does not include facts as to where, how, how long and why he was civilly detained as punishment. The record and complaint demonstrate that Dabbs was released from both custody and the emergency room. We find this allegation is insufficient to state a claim.

¶ 21     Dabbs next asserts an eighth amendment violation (count VII), alleging that the defendants practiced "deliberate indifference to the risk of harm." Dabbs does not identify the risk or the harm or explain how Peoria County was deliberately indifferent to it. The only viable facts in his complaint connected with this allegation assert that he was forced to go without heat in his apartment for approximately six weeks in the Fall of 2015 and he was not allowed to use the restroom while in custody. If these were the circumstances Dabbs believed constituted cruel and unusual punishment, he fails to offer any support. He does not provide a weather summary for the time he was without heat or indicate the temperature in his apartment during the period his heat was shut off. He does not specify that he needed to use the restroom while in custody, asked to do so, and his request was denied. Neither instance rises to the level of cruel and unusual punishment

8

under the circumstances and Dabbs does not offer specifics that suggest otherwise. We find this count failed to state a claim.

¶ 22    The last allegation is false arrest based on false statements from Sorrell and Brooks. Dabbs submits that despite the false statements, he was arrested and prosecuted. He does not explain what statements were false, to whom the statements were made, how the statements resulted in his arrest, or how his arrest was unlawful. The relevant facts presented in the complaint include only that Sorrell and Brooks filed a false police report, Dabbs was arrested for disorderly conduct and the false statements resulted in court proceedings against him. We find Dabbs's conclusory statements were insufficient to state a claim.

¶ 23    The final issue concerns whether the court erred when it denied Dabbs's motion for the appointment of special counsel, his refiled motions for default and his rule to show cause. Dabbs maintains that the state's attorney cannot represent VAC, Brooks should have been defaulted for failure to enter an appearance and he was entitled to issuance of a rule to show cause.

¶ 24    The court by its own motion, or a person interested in case by petition, may seek the appointment of a special prosecutor by alleging the state's attorney is "sick, absent, or unable to fulfill his or her duties" or has an "actual conflict of interest" in the case. 55 ILCS 5/3-9008(a-5), (a-10) (West 2018). A special prosecutor may be appointed when (1) the prosecutor is interested in the case as a private individual, (2) the prosecutor is a party to the litigation, or (3) the continued participation by the prosecutor creates an appearance of impropriety. *People v. Weeks*, 2011 IL App (1st) 100395, ¶ 46. We review a trial court's determination regarding a motion for appointment of special prosecutor for an abuse of discretion. *McCall v. Devine*, 334 Ill. App. 3d 192, 199 (2002).

¶ 25    In his motion, Dabbs sought the appointment of special counsel to investigate VAC. On appeal, Dabbs argues that neither VAC nor Peoria County can account for its tax funding, requiring an investigation by a special counsel. Dabbs relies on *Hazen v. County of Peoria*, 138 Ill. App. 3d 836 (1985) to support his assertion that appointment of special counsel as a "friend of the court" was proper. In *Hazen*, the court found that the employees of VAC were not county board employees entitled to payment of their attorney fees by the county. *Id.* at 842. The court further found that even if VAC were a county department, payment for counsel for VAC should be from VAC funds, not from general county funds. *Id.* Because VAC never petitioned the court for appointment of special counsel, the board rejected payment to special counsel from county general funds. *Id.* The *Hazen* court further stated that if the state's attorney was VAC's legal advisor and if VAC declined its advice, VAC would have to petition the court to appoint special counsel. *Id.*

¶ 26    *Hazen* is distinguished. In that case, VAC and the county were in litigation against each other, with the state's attorney representing the county and private counsel representing VAC. *Id.* at 838. In the instant case, the complaint was filed by Dabbs against various employees of the county and VAC. Dabbs was not seeking payment from the county board for retention of counsel after the fact as VAC did in *Hazen*. *Id.* at 843. He sought payment from VAC funds. Also distinguishing *Hazen* is the purpose for which Dabbs seeks special counsel. In *Hazen*, special counsel was used to represent VAC in litigation against the county. *Id.* at 838. Here, Dabbs seeks special counsel to serve as an investigator of the VAC office. We find the trial court did not err when it denied Dabbs's motion for appointment of special counsel.

¶ 27    Dabbs also relies on *Hazen* to support his assertion that Brooks should have been defaulted for lack of appearance as the state's attorney was without authority to represent him. He looks to *Hazen* to demonstrate the court erred in denying his petition for rule to show cause, where he

10

argues the appearance by attorneys from the state's attorney's office were void as to all defendants and thus they were all in default. Dabbs also challenges the late filings by Peoria County in the petition. In *Hazen*, the county board sued VAC to enforce VAC's compliance with various rules and regulations. *Id.* at 840. This court found that the state's attorney did not have a duty to represent VAC because it was a separate unit of local government and thus the county was not required to pay for VAC's private counsel out of county funds. *Id.* at 842. In contrast in the instant case, as noted above, VAC and the county and its employees were not involved in a civil action against each other but were sued together as defendants. The county board in *Hazan* challenged the trial court's order that it pay for VAC's private counsel. *Id.* Here, the county is not seeking to avoid payment for VAC's legal representation. The *Hazen* court further stated that were VAC under the state's attorney's purview and declined representation as occurred there, VAC was required to seek the appointment of special counsel. *Id.* The court did not determine the state's attorney could not represent VAC. We find the trial court did not err in denying Dabbs's requests to default the defendants and for a rule to show cause.

¶ 28                                    CONCLUSION

¶ 29        For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 30        Affirmed.